**Elder Elruth CHESTER,**
**Appellant (Plaintiff),**

v.

**INDIANAPOLIS NEWSPAPERS, INC.**
**d/b/a The Indianapolis Star and Eunice McLay–Trotter, Appellees (Defendants).**

No. 29A02–8908–CV–430.

Court of Appeals of Indiana,
Second District.

April 19, 1990.

Rehearing Denied July 31, 1990.

Jeffrey S. Rasley, Carol A. Stephan, James Dorr Babcock, P.C., Indianapolis, for appellant.

Robert P. Johnstone, Jan M. Carroll, Barnes & Thornburg, Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff Elder Elruth Chester (Chester) appeals from the trial court's grant of summary judgment entered in favor of Indianapolis Newspapers, Inc. d/b/a the Indianapolis Star (the Star) and Eunice McLay–Trotter (Trotter), claiming that the trial court erred in determining that Chester presented no evidence of actual malice in regards to his claim against the Star and Trotter for libel.

We affirm.

## FACTS

The facts most favorable to Chester, the non-moving party reveal that in 1984, the Star devoted extensive coverage to the needs and problems of various Indianapolis neighborhoods. Trotter, a reporter for the Star chose a depressed area in downtown Indianapolis, and spent approximately sixteen hours per week in the neighborhood interviewing residents about crime, city services, and other community issues.

During one of her walks through the neighborhood, she encountered Alfreda Knox (Knox) who was crying on a street corner. Knox explained that her food stamps had been taken from her in a robbery, and Trotter offered to help. Trotter went to Knox's house where she lived with her six children. When Trotter noticed numerous holes in the walls, exposed wiring, and bad plumbing, she recommended that Knox go to the township trustee for assistance. Knox explained that Chester, her landlord, told her not to go to any agencies because the house was uninhabitable. Trotter attempted to talk with Chester by telephone, but he claimed that the connections were bad, so Trotter told him that she would see him the next time she was in the neighborhood.

Several days later, Knox called Trotter and informed her that Chester had disconnected her electricity because she failed to pay Chester for utilities and a broken window. Trotter arranged to have the utilities switched to Knox's name. Although Knox eventually moved from the house, Trotter learned from other residents that Chester owned many of the properties in the neighborhood and that several were in a state of disrepair. Trotter confronted Chester and told him that several residents believed that he was speculating in real estate. Chester denied this, told Trotter that he was the minister of the Tabernacle Church of God in Christ, and that he was acquiring property to expand his church.

Trotter learned that the properties Chester "owned" were also titled in the name of the church. Many of the properties were boarded-up houses or vacant lots. Chester was renting some of the houses owned by the church to tenants. At the county recorder's office, Trotter found that there were approximately sixty parcels owned by Chester or the church. Many of the properties initially acquired by Chester were subsequently transferred to his church. Trotter also learned that Chester had claimed tax exemptions for several of the church properties but that those exemptions had been revoked because the properties had not been used for church purposes. Trotter interviewed Chester about his efforts to regain the tax exemptions and about his plans to expand his church which consisted of a small one-story cinder block structure that Chester had built himself. Chester refused to show Trotter any documentation that he was an ordained minis-

ter. Trotter also contacted the Church of Christ denomination in California, where she learned that there was no information regarding Chester's church.

As a result of Trotter's investigations, the Star published an article about Chester on November 18, 1984. The article portrayed Chester as a self-ordained pastor who was speculating in real estate by purchasing property in the church's name to make a personal profit. The article also reported that the tax exempt status for the properties had been denied by the Board of Tax Commissioners. However, it was not reported that this denial was reversed by the Marion County Superior Court prior to the article's publication. Chester claimed that the article falsely stated that he walked into the homes of tenants without knocking and that he refused to loan his tenants money to buy food.

On January 24, 1986, Chester filed a complaint against the Star and Trotter alleging that the story contained false and defamatory statements about Chester and that Trotter acted negligently in writing the story. On May 31, 1988, the Star and Trotter moved for summary judgment and following a hearing, the trial court granted the motion.

### ISSUE

The only issue before us is whether the entry of summary judgment in favor of the Star and Trotter was contrary to law?

### DECISION

PARTIES' CONTENTIONS—Chester argues that the entry of summary judgment was erroneous when the trial court determined that he failed to present any evidence of actual malice on the part of Trotter and the Star.

The Star and Trotter respond that the trial court properly found that there was no genuine issue of material fact regarding the existence of actual malice.

CONCLUSION—The trial court properly entered summary judgment in favor of the Star and Trotter.

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279; Ind. Rules of Procedure, Trial Rule 56(C). In determining the propriety of summary judgment, the court must accept as true all the facts which support the non-moving party and resolve all doubts in its favor. *Kreegar, supra.* While a reviewing court also accepts the facts alleged by the non-moving party, the burden to show reversible error on appeal is on the appellant, and we indulge all reasonable presumptions in favor of the trial court. *Id.; Raymundo v. Hammond Clinic Association* (1983), Ind., 449 N.E.2d 276.

In *AAFCO Heating And Air Conditioning v. Northwest Publications, Inc.* (1975), 162 Ind.App. 671, 321 N.E.2d 580, *cert. denied* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 this court adopted the constitutional standard to be applied regarding liability for those who publish articles relating to matters of general or public interest:

> "We adopt a standard that requires the private individual who brings a libel action involving an event of general or public interest to prove that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard of whether it was false."

*Id.* at 679, 321 N.E.2d at 586; *see also Jamerson v. Anderson Newspapers, Inc.* (1984), Ind.App., 469 N.E.2d 1243; *Patten v. Smith* (1977), 172 Ind.App. 300, 360 N.E.2d 233, *trans. denied.*

*AAFCO* stemmed from a series of articles published by the defendant newspaper about a residential fire which caused the death of two small children. The plaintiff, AAFCO, had installed a furnace shortly before the fire. The articles reported that AAFCO had not obtained a permit and one story reported that "one fire official observed that 'a heavy duty blower on the furnace may have caused an overload on the electrical service' which ignited the fire." *AAFCO, supra,* 162 Ind.App. at 673, 321 N.E.2d at 583. This court af-

firmed the trial court's grant of summary judgment in favor of the newspaper as to AAFCO's claim of libel observing that even though the articles conveyed a false impression of AAFCO, there was no evidence of record that the newspaper acted with malice in publishing the series of articles:

> "The publisher who maintains a standard of care designed to avoid knowing or reckless falsehood must be accorded sufficient assurance that those factual errors which nonetheless occur will not expose him to indeterminate liability. If a genuine issue of material fact concerning a publisher's reckless disregard for the truth could be raised by a mere showing that the published speech was factually incorrect, the constitutional policy of avoiding media self-censorship would be seriously eroded.
>
> Assuming that the impression conveyed by the article was false, we find no evidence in the record that Northwest had any knowledge of the impression's falsity, nor do we find any evidence that Northwest entertained serious doubts of the impression's falsity."

*Id.* at 688–89, 321 N.E.2d at 591.

■ While Chester maintains that Trotter's articles demonstrated the presence of malice, the record reflects otherwise. The basis of Chester's complaint is merely that the article did not convey a favorable impression of him. The alleged omissions or acts committed by Trotter *at most* constitute negligence. Even if Chester could somehow prove that Trotter negligently interpreted the public records she reviewed including the tax and property records, or should have searched for other records, or misconstrued a statement from a person she interviewed, such proof would fall far short of the constitutional requirement.

Negligence or failure to investigate is not sufficient to establish actual malice. *AAF-CO* at 685, 321 N.E.2d at 589; *see also St. Amant v. Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262. Chester bore the burden of demonstrating that Trotter was aware of the falsity or, in fact, entertained serious doubt as to the truth of the facts in the article. *See AAFCO, supra.*

Our review of the record reveals no recurrent lack of investigative effort on Trotter's part to verify factual statements sufficient to support a reasonable inference of reckless falsity. Even assuming that the impression conveyed by Trotter's article was false, we find no evidence that Trotter or the Star had knowledge of the impressions of falsity, or that there was any evidence that the Star or Trotter entertained any serious doubt of the impressions of falsity.

■ Likewise, we reject Chester's contention that the portion of the trial court's ruling declaring that Chester failed to present clear and convincing evidence of actual malice constituted reversible error. The trial judge's order provided that "[Chester] *had adduced no evidence showing actual malice on the part of either Defendant Indianapolis Newspapers, Inc., d/b/a The Indianapolis Star or Defendant Eunice McLayea–Trotter, let alone any evidence which would be sufficient to satisfy the 'clear and convincing' standard.*" *Record* at 297 (emphasis supplied).

■ While some jurisdictions require the clear and convincing evidence standard to be applied at trial *and* at the summary judgment stage,[1] this standard has not

---

1. *In Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, Justice White, in writing for the majority, observed:

> "[W]here the *New York Times* 'clear and convincing evidence' requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute

concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."

*Id.* at 255–56, 106 S.Ct. at 2513–14.

Other jurisdictions have also adopted the standard announced in *Liberty Lobby: Dombey v.*

been followed in Indiana. Our supreme court has determined that summary judgment is proper only when no issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Kreegar, supra; see also Ogden Estate v. Decatur County Hosp.* (1987), Ind.App., 509 N.E.2d 901, *trans. denied; First Savings & Loan Ass'n of Central Indiana v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, *trans. denied.* When a movant for summary judgment presents evidence which negates an element of the plaintiff's cause of action, and there is a *prima facie* showing in this evidence, the burden shifts to the plaintiff to demonstrate the existence of a genuine factual issue. If the plaintiff does not show the existence of a factual issue, the entire action will fail. *See 3 Harvey, Indiana Practice* 56.10 (1988). In *McNabb v. Mason* (1970), 148 Ind.App. 233, 264 N.E.2d 623, this court observed that:

> "[A] trial court upon summary judgment motion cannot, nor can we upon appeal, prejudge a plaintiff's ability to sustain his, or in this instance, her burden of proof upon the factual issues. The *existence* of factual issues, however, is quite a different question from that concerning the burden of establishing, as a matter of evidentiary proof, the facts alleged by plaintiff. We are here concerned only with the former question. We cannot prejudge that matter."

*Id.* at 241, 264 N.E.2d at 627 (emphasis in original).

The record before us reflects that there is *no evidence* of actual malice on the part of Trotter or The Star. The trial court therefore properly granted the motion for summary judgment notwithstanding the statement that Chester failed to present clear and convincing evidence of actual malice.

The paramount interest of freedom of the press has long been protected by re-quiring a showing of clear and convincing proof of actual malice, a requirement whose roots are traceable to 1735 when a colonial printer named John Peter Zenger was prosecuted for seditious libel because he published articles critical of New York's royal Governor, William Cosby. Andrew Hamilton, Zenger's lawyer, pursuaded the jury to decide the articles were not libelous thereby striking a blow against the censorship which had been exercised by the Crown in colonial America.

Because we have concluded that there was no evidence of actual malice in Trotter's article, the trial court's entry of summary judgment in favor of The Star and Trotter was proper.

Judgment affirmed.

HOFFMAN, P.J., and SULLIVAN, J., concur.

*Phoenix Newspapers, Inc.* (1986), 150 Ariz. 476, 724 P.2d 562; *Planned Protective Services, Inc. v. Gorton* (1988), 200 Cal.App.3d 1, 245 Cal.Rptr. 790; *Della–Donna v. Gore Newspapers Co.* (1987), Fla.Dist.Ct.App., 510 So.2d 984; *Davis v. Keystone Printing Service, Inc.* (1987), 155 Ill. App.3d 309, 108 Ill.Dec. 17, 507 N.E.2d 1358;

*Hudak v. Fox* (1987), 215 N.J.Super. 233, 521 A.2d 889; *Scacchetti v. Gannett Co., Inc.* (1988), 123 A.D.2d 497, 507 N.Y.S.2d 337; *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 518 N.E.2d 1177; *Long v. Egnor* (1986), W.Va., 346 S.E.2d 778; *Van Straten v. Milwaukee Journal* (1989), 151 Wis.2d 905, 447 N.W.2d 105.