COMFAX CORPORATION and James Kuker, **Appellants/Defendants/Counterplaintiffs,**

v.

NORTH AMERICAN VAN LINES, INC., **Appellee/Plaintiff/Counterdefendant.**

No. 01A02–9105–CV–229 [1].

Court of Appeals of Indiana, First District.

Feb. 10, 1992.

1. This case was transferred to this office by order of the Chief Judge on January 2, 1992.

Ronald L. Sowers, Richard R. Bleeke, Fort Wayne, for appellants/defendants/counterplaintiffs.

Thomas W. Belleperche, Branch R. Lew, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee/plaintiff/counterdefendant.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Comfax Corporation ("Comfax") and James Kuker ("Kuker") appeal from partial summary judgment granted in favor of North American Van Lines, Inc. ("NAVL"), in an action involving claims and counterclaims for breach of contract, conversion, and misappropriation of confidential business information, interference with business relationships, constructive fraud, constructive trust, intentional infliction of emotional distress, and punitive damages. We affirm in part and reverse in part.

## ISSUES

We restate the issues on appeal as:

1. Whether the trial court correctly entered summary judgment in NAVL's favor on the claim for tortious breach of contract?

2. Whether the trial court correctly entered summary judgment in NAVL's favor on the claims for tortious interference with business relationships and fraud?

3. Whether the trial court correctly entered summary judgment in NAVL's favor on the claim for constructive trust?

4. Whether the trial court correctly entered summary judgment in NAVL's favor on Kuker's claim for emotional distress?

5. Whether the trial court erred in applying the clear and convincing standard in entering summary judgment in NAVL's favor on the claim for punitive damages?

### FACTS[2]

NAVL is a large nationwide moving and storage corporation. Comfax is a smaller corporation which acts as a local distributor in the Fort Wayne area for a major computer software developer. Kuker was Comfax's president.

In late 1983 or early 1984, NAVL and Comfax began negotiations for the purpose of NAVL purchasing for itself and providing to its agents a generic computerized accounting package known as "CYMA." NAVL selected the CYMA software because it was the only software program compatible with NAVL's thirteen period accounting year. NAVL also discussed with Comfax possible development of two custom designed computer software accounting packages, a Commission Statement Reconciliation System ("CSRS"), and a Storage Billing Module ("SBM"). The two modules would be unique to the industry. Extensive efforts began to familiarize Comfax personnel with the moving and storage industry. Comfax commenced work on the two programs on oral representations by NAVL, prior to signing any written documents. North American Moving and Storage ("NAMS"), NAVL's local agent, was to be the system's test site.

On September 11, 1984, NAVL and Comfax signed a written contract ("Contract"). *See* Record at 33–41. Attached to it were functional specifications which had already been developed by Comfax in conjunction, cooperation, and agreement with NAVL. Both parties' legal counsel reviewed and revised the Contract, although it was originally drafted by Comfax's personnel and counsel. The Contract included projected

completion dates for the programs of ninety (90) days from the Contract's execution date, and included a clause providing that a ten percent (10%) penalty fee, subtracted from the Contract price, would be assessed for each calendar month beyond the ninety (90) day period required for completion. Kuker suggested the ninety (90) day completion date, based on progress made to and including the date the Contract was executed.

The Contract also provided that the parties would deal with each other in confidence and maintain the secrecy of all information disclosed to one another. The Contract envisioned that the programs would remain Comfax's property, and that for a period of two years following the Contract's execution, NAVL would agree to notify its agents of the availability of the products and would allow Comfax to contact NAVL's agents directly and generally advertise the availability of the program's products. Thus, the Contract and the relationship between the parties essentially granted to Comfax a market for the sale of its products with the assistance of introduction to those agents by NAVL.

After the Contract was executed, Comfax continued to develop the programs. Comfax prepared drafts of design specifications, which were forwarded to NAVL for review, revision, and return. In the late fall of 1984, revision and return time from NAVL slowed while demands for the project's completion increased. Previously, NAVL had not pressured Comfax to complete the project quickly. However, in October of 1984, NAVL began to demand early completion. NAVL stated that if the modules were completed prior to December 27, 1984, and if the system achieved a certain level of accuracy, the modules

---

**2.** NAVL, throughout its appellee's brief, repeatedly "encourages the court to review the record in its entirety," while "recognizing that the court's review of this voluminous record will be burdensome." Appellee's Brief at 3, 29, 41. Indeed, we note that such painstaking review is not our function on appeal. Parties must present their errors with proper citation to authorities and the record to demonstrate their position. *See* Ind. Appellate Rule 8.3(A)(7). Ap-

pellate courts will not sift through the record to locate portions which support a party's case; failure to cite appropriate sections of the record results in waiver of the applicable issues. *Martin Chevrolet Sales, Inc. v. Dover* (1986), Ind. App., 501 N.E.2d 1122, 1130. However, because we are able to discern the crux of NAVL's contentions despite this failure, we address its responses to Comfax's claims of error.

would be presented and featured at agent meetings in January of 1985. Record at 3136. The record shows conflicting testimony regarding whether such agent meetings had ever been discussed with Comfax, but these meetings were not referenced in the parties' Contract.

Employees at NAVL saw the project's profit potential and wished to take advantage of the financial opportunity for NAVL. One of NAVL's divisions, Information Systems Services ("ISS"), continued to communicate with Comfax and Kuker, and Comfax believed that the parties' relationship was continuing as planned. ISS, however, was planning to "stomp" and "get rid of" the Comfax Contract. Record at 2029, 1850. NAVL and NAMS continued to delay return of information Comfax sent them to review and return, which was required to complete the project. NAVL also increased its demands for completion of the project. ISS's liaison with Comfax stated that he would refer NAVL agents to Comfax for sales of the generic software package. Record at 2863. Several initial sales were made, but the comprehensive referral system that Comfax had anticipated was never realized. Several times, NAVL sought information on becoming a CYMA distributor itself.

In response to NAVL's requests, Comfax devoted essentially all of its resources and manpower to the NAVL project. NAVL's letter to Comfax on December 14, 1984, stated that it would feature Comfax's products at an upcoming agent meeting provided the products had reached a state of sufficient completeness and accuracy. Record at 3136. As late as December 20, 1984, NAVL approved and returned to Comfax a set of design specifications for further action by Comfax. Record at 3239–3301.

On December 27, 1984, NAVL wrote to Kuker, informing him of NAVL's intent to terminate the Contract, citing as reasons therefor Comfax's failure to comply with the Contract regarding the employment of qualified personnel, Comfax's financial instability, and Comfax's bad faith in business dealings with NAVL. Record at 3305.

About the time that NAVL notified Comfax of its decision to terminate the Contract, one of Comfax's key programmers, and the NAVL project's manager, left Comfax and shortly thereafter began to work for NAVL. The modules were not completed in December of 1984, although completion was expected in January or February of 1985.

Ultimately, the Contract was terminated in a letter from NAVL to Comfax on January 31, 1985. Record at 3307. When NAVL's agents would inquire regarding Comfax's programs, NAVL responded that it did not endorse Comfax's products and would be producing a similar product itself in the near future. Record at 2050–2053. Shortly thereafter, NAVL filed suit against Comfax and Kuker alleging breach of contract and seeking to prevent the disclosure of and to recover from Comfax any and all NAVL information or documents in their possession. NAVL later established a wholly-owned subsidiary called Relocation Management Systems ("RMS"), which marketed a software package.

Following the Contract's termination and the initiation of litigation, Comfax went into financial collapse and ceased doing business. Kuker attempted suicide, was hospitalized, and commenced an extensive rehabilitation program. NAVL enlisted the services of another company, Bluebird Systems, with which it completed a Commission Reconciliation System which would interface with a comprehensive computerized accounting package. After that project was completed, RMS marketed the package to NAVL's agents.

Comfax and Kuker eventually filed a counterclaim alleging several theories, the majority of which are the basis for this appeal. NAVL conceded that triable issues remain on the breach of contract and conversion counts, but was granted partial summary judgment on the remaining counts. This appeal ensued. Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

■ When reviewing the propriety of a ruling on a motion for summary judgment,

this court applies the same standard applicable to the trial court. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. *Id.* Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law should summary judgment be granted. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Jackson v. Warrum* (1990), Ind.App., 535 N.E.2d 1207, 1210. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.

### Issue One

▉ Comfax and Kuker first contend that the trial court erred in entering summary judgment in NAVL's favor on their counterclaim for tortious breach of contract. We agree with NAVL that Indiana does not recognize such a novel claim, and any recovery is restricted to recovery under a straight breach of contract theory.[3]

▉ After canvassing the applicable Indiana case law, we can find no cases providing for the separate claim of tortious breach of contract which Comfax and Kuker assert, and their reliance on the cited cases is misplaced. Although no separate action may be maintained for this claim, if a breach of contract is accompanied by action of a tortious nature, such action may support an award of punitive damages. *See Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448, 454 (to award punitive damages, independent tort must be found and public interest must be served)[4]; *see also Vernon*

*Fire & Casualty Co. v. Sharp* (1976), 264 Ind. 599, 615–616, 349 N.E.2d 173, 180 (discussing nature of conduct required to award punitive damages in insurance context); *Sexton v. Meridian Mutual Insurance Co.* (1975), 166 Ind.App. 529, 532–533, 337 N.E.2d 527, 529 (same); *Rex Insurance Co. v. Baldwin* (1975), 163 Ind.App. 308, 311–312, 323 N.E.2d 270, 273–274 (same); *Kiyose v. Trustees of Indiana University* (1975), 166 Ind.App. 34, 43–44, 333 N.E.2d 886, 891 (to support a claim in *tort,* complaint must describe tortious conduct forming basis of claim) (emphasis added).

Comfax and Kuker urge that we follow California case law in recognizing a new claim for tortious breach of contract; however, such is not our function as an intermediate appellate tribunal. Even if we were to adopt the California courts' recognition of this novel claim, Comfax and Kuker would not prevail. The California cases to which they cite all deal with specific factual situations which are not present in this case. *See Tameny v. Atlantic Richfield Co.* (1980), 27 Cal.3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (employee wrongfully discharged; furthermore, court did not determine whether recovery in tort for breach of implied covenant of good faith and fair dealing would be available); *Crisci v. Security Insurance Co.* (1967), 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (insurer refused to settle claim with insured); *Wallis v. Superior Court* (1984), 160 Cal. App.3d 1109, 207 Cal.Rptr. 123 (in certain limited circumstances, such as in the context of an anti-competition agreement between a business and an employee encouraged to retire prematurely, action for tortious breach of contract may lie); *cf. Comunale v. Traders & General Insurance Co.* (1958), 50 Cal.2d 654, 328 P.2d 198 (in suits relating to financial damage and not personal injury caused by negligence, plaintiff must choose between tort or contract

---

**3.** As stated above, NAVL concedes that triable issues remain on the breach of contract and conversion claims. Record at 806.

**4.** We agree with NAVL that *Peterson* does not support the claim of a cause of action for tortious breach of contract; rather, the decision enumerates the types of conduct and situations

necessary to support an award of punitive damages. *See Peterson,* at 454–455; *see also Issue Five.* The discussion of punitive damages cases is inapplicable to the threshold issue of whether a claim for tortious breach of contract exists in Indiana.

actions and may not recover under both theories). Because we determine that Indiana does not recognize a claim of tortious breach of contract, the parties' discussion of the factors enumerated in *Wallis* to support such a claim are irrelevant.[5] Additionally, arguments concerning public policy are best addressed to our legislature, and not this court, which must adhere to binding precedent. Comfax and Kuker may not recover based on a claim which is not recognized in this state. Thus, we affirm summary judgment on this issue.

*Issue Two*

Next, Comfax and Kuker claim that the trial court erred in granting summary judgment in NAVL's favor on their counterclaims of tortious interference with business relationships and fraud.[6] We disagree, and address each of Comfax and Kuker's claims in turn.

■■■ First, on Comfax and Kuker's contention that NAVL tortiously interfered with their business relationships, we find that the pleadings and other documents submitted in support of the summary judgment motion, even taken in a light most favorable to Comfax and Kuker, do not support such a claim. In Indiana, an action for tortious interference with business relationships has five elements: the existence of a valid business relationship; the defendant's knowledge of the existence of the relationship; the defendant's intentional interference in the relationship; the absence

of any justification; and, damages resulting from the defendant's interference. *Flintridge Station Associates v. American Fletcher Mortgage Co.* (7th Cir.1985), 761 F.2d 434, 440 (applying Indiana law). The only difference between the torts of interference with contractual relationships and interference with business relationships is that the latter does not require the existence of a contractual relationship. *Id.* Such actions lie where the breach is induced by a third party, not by one party to the contract. *Kiyose*, 166 Ind.App. at 43–44, 333 N.E.2d at 891; *see also Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609, 612.

■ Comfax and Kuker's allegations on this claim are groundless, and at most, amount to sheer speculation. The counterclaim fails to state any facts which would show that NAVL interfered with Comfax's business relationships with any third parties, beyond bald assertions of possible business opportunities. Comfax and Kuker have failed to show that Comfax had a valid business relationship with a third party with which NAVL interfered. They allege that NAVL interfered with and prevented sales to certain third parties, but cannot show that any viable business relationships existed between themselves and the third parties, and have not presented affidavits or other additional testimony from these third parties demonstrating such relationships.[7, 8] Even viewing the ev-

---

5. Comfax and Kuker make much of NAVL's alleged breach of contract committed in violation of the implied covenants of good faith and fair dealing; however, such contentions may be appropriate at trial on the remaining issue of breach of contract, and do not support an independent claim for tortious breach of contract. Such factors may also bear on the propriety of punitive damages. *See Issue Five.*

6. The parties dispute the denomination of Count IV of Comfax and Kuker's counterclaim. Although inartfully drafted, Comfax and Kuker claim that the count is for tortious interference with business relationships rather than tortious interference with contractual relationships. Indeed, Comfax and Kuker concede that no facts support a claim for tortious interference with contractual relationships, and argue that only a claim for tortious interference with business relationships should survive summary judg-

ment. Appellants' Brief at 21. Whether characterized as interference with contractual relationships or interference with business relationships, our resolution of this issue would be the same. Thus, any ambiguity inherent in the count's label, as alleged by NAVL, is irrelevant.

7. *See* Record at 2802–2805, 2892–2898, 2049–2052. If third parties' affidavits supporting such alleged relationships had accompanied the documents which Comfax and Kuker presented in opposition to summary judgment, a different case might be presented. However, we restrict our holding to the facts of this case.

8. Comfax and Kuker cite a book, a case from another jurisdiction, and an Indiana Pattern Jury Instruction to support their claim that they maintained business relationships with third parties with which NAVL interfered. Such secondary sources are not persuasive to this court

idence presented and inferences therefrom in a light most favorable to Comfax and Kuker, they have failed to present the issues of material fact necessary to survive summary judgment. This portion of the partial summary judgment is affirmed.

■ The second portion of Comfax and Kuker's claim on this issue is regarding their counterclaim for actual fraud. We find that summary judgment was properly entered in NAVL's favor.

■ The essential elements of actual fraud are a false material representation of past or existing facts, made with knowledge or reckless ignorance of the falsity, which causes reliance to the detriment of the person relying on the representation. *Medtech Corp. v. Indiana Insurance Co.* (1990), Ind.App., 555 N.E.2d 844, 847, *trans. denied.* We find that Comfax and Kuker have failed to allege facts or demonstrate genuine issues of material fact showing that NAVL falsely represented past or existing facts. *See* Record at 104. The claims, rather, show that NAVL may have falsely represented future actions on which Comfax and Kuker relied.[9] However, actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed. *Kopis v. Savage* (1986), Ind.App., 498 N.E.2d 1266, 1272; *see Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 320; *Medtech,* 555 N.E.2d at 847. Thus, we affirm the trial court's grant of summary judgment on actual fraud. The instances of misconduct and false representation which Comfax and Kuker allege may be properly considered at trial of the breach of contract and conversion claims, and if proven, might warrant the imposition of punitive damages.

■ Finally, Comfax and Kuker urge that their claim for constructive fraud was improperly disposed of by summary judg-ment. Again, we find that Comfax and Kuker have failed to allege facts or show issues of material fact which would prevent the entry of summary judgment on this issue.

■ Constructive fraud is the breach of a legal or equitable duty which is fraudulent as a result of its tendency to deceive others, to violate a public or private trust, or to injure the public interests. *Medtech,* 555 N.E.2d at 848. The elements of constructive fraud are a duty existing by virtue of the relationship between the parties, representations or omissions made in violation of that duty, and a reliance on the representation or omission by the individuals to whom the duty is owed to the detriment of those individuals. *Id.* at 848–849. In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them. *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 865, *trans. denied.* This special relationship is shown when the parties have fiduciary duties to each other, such as in the relationship between lawyer and client. *Id.*

Comfax and Kuker have failed to carry their initial burden in demonstrating a special relationship between the parties that could form the basis of a constructive fraud claim. *See id.; cf. Scott,* 571 N.E.2d at 324 (constructive fraud may arise in absence of confidential relationship where seller makes unqualified statements in order to induce another to make a purchase; buyer relies upon the statements; and, seller has professed to buyer that he has knowledge of the truth of the statements). Constructive fraud does not require that intent be proven because the parties are not dealing with each other at arm's length. *Sanders,* 509 N.E.2d at 866. In this case, however, the parties were involved in an arm's length, contractual arrangement and the requisite fiduciary relationship may not be predicated on such an

---

when binding precedent, including federal cases applying Indiana law in resolving similar issues, exists. *See Flintridge,* 761 F.2d at 440.

**9.** Comfax and Kuker repeatedly refer to their claims as promises of what NAVL "would" do to assist Comfax and Kuker in marketing their computer packages. *See* Appellants' Brief at 25, 27. We disagree with appellants' contention that representations of what "would" happen do not encompass future actions.

arrangement. *See Flintridge,* 761 F.2d at 442 (agreement between mortgage company and real estate developer did not create fiduciary relationship); *see also Grow v. Indiana Retired Teachers Community* (1971), 149 Ind.App. 109, 114, 271 N.E.2d 140, 143 (before confidential relationship can arise, there must be dominant and subordinate parties involved); *cf. Hall–Hottel Co. v. Oxford Square Co–Op, Inc.* (1983), Ind.App., 446 N.E.2d 25, 31, *trans. denied* (fiduciary relationship existed between cooperative housing corporation and management company, which explicitly agreed to follow management agreement). Without this relationship, Comfax and Kuker may not pursue a claim for constructive fraud.

We note that Comfax and Kuker's argument that a fiduciary relationship was established by virtue of the clauses in the parties' Contract regarding the confidentiality of the information exchanged between them is unpersuasive. *See* Record at 35–37. Such reliance essentially misses the point in construing the nature of a fiduciary relationship. These clauses do not establish a fiduciary relationship between the parties, but rather describe contractual obligations to which both parties are bound. As discussed above, pure contractual relations between parties entering into an arm's length transaction may not form the basis for constructive fraud,[10] and no material facts are shown which would create the relationship required to sustain Comfax and Kuker's claim.

## Issue Three

Comfax and Kuker also contend that their claim for the imposition of a constructive trust should have been sustained at the summary judgment level. We disagree and find that this is an inappropriate claim given the facts of the case at bar.

A constructive trust will be imposed on property only where actual or constructive fraud is found, and a confidential or fiduciary relationship has been breached. *Kopis,* 498 N.E.2d at 1272. As discussed above, Comfax, Kuker, and NAVL were engaged in an arm's length transaction, negating any fiduciary relationship; thus, a constructive trust may not be imposed. *See id.* at 1272–1273. Additionally, we have found in *Issue Two* that no actual or constructive fraud occurred, also preventing the imposition of a constructive trust. Even if Comfax and Kuker could overcome these hurdles, there is no corpus or trust property on which the alleged trust could be imposed. In short, the parties' dispute involves a commercial contract, and as such is not a proper subject for the application of the constructive trust theory. *See id.* No construction of the facts or inferences therefrom support Comfax and Kuker's claim for a constructive trust. The conduct of which Comfax and Kuker complain, any damages resulting from NAVL's alleged misconduct, and any benefits "stolen" by NAVL are properly addressed in the counts of breach of contract and conversion, which remain for trial.

## Issue Four

Kuker contends that the trial court erred in entering summary judgment on his count for intentional infliction of emotional distress in NAVL's favor. We find that the trial court correctly determined that Kuker demonstrated no facts or inferences which would support his claim.

The parties correctly cite *Shuamber v. Henderson,* (1991), Ind., 579 N.E.2d 452, and *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27, as the leading supreme court cases discussing recovery for infliction of emotional distress in Indiana. In *Cullison,* the court reasoned that Indiana's "impact rule" does not apply to prohibit recovery for emotional distress when sustained in the course of a tortious trespass. *Id.* at 30. The court held that the tort of intentional infliction of emotional distress may be recognized in Indiana when the proper circum-

---

**10.** We reiterate that appellants' claims of unfair dealing and misappropriation of confidential information are best addressed in the trial of the breach of contract and conversion issues. Much of the conduct which appellants describe, if substantiated at trial, might support their claim for punitive damages. *See Issue Five.*

stances occur, but that the plaintiff had not shown those circumstances to be present. *Id.* at 31. To recover under such a claim, a plaintiff must show that the defendant by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to the defendant. *Id.*

In *Shuamber*, 579 N.E.2d 452, a mother and daughter sought recovery for negligent infliction of emotional distress suffered in an automobile accident in which they witnessed a family member die. *Id.* at 453. The court modified the "impact rule", reasoning that where a plaintiff sustains a direct impact by the defendant's negligence, and because of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, the plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff. *Id.* at 456. Thus, the court held that the Shuambers's claim for negligent infliction of emotional distress was improperly disposed of on summary judgment, and that the Shuambers should be allowed to present their case to the jury. *Id.*

Synthesizing *Cullison* and *Shuamber*, we conclude that Kuker has not demonstrated facts sufficient to survive NAVL's motion for summary judgment. Kuker, as president of Comfax, certainly suffered emotional upheaval when the Contract with NAVL was terminated and the corporation's well-being declined as a result. However, even if we were to characterize NAVL's behavior in terminating the Contract as extreme and outrageous, which we do not, we cannot say that any facts presented, even construed most favorably to Kuker, demonstrate that NAVL intentionally or recklessly caused Kuker's emotional problems. *See Cullison*, 570 N.E.2d at 31.

Moreover, *Shuamber*, while recognizing a claim for negligent infliction of emotional distress, involved facts far removed from those in Kuker's case. In *Shuamber*, the plaintiffs had witnessed a family member's death and sustained a direct impact as a result of the defendant's negligence, while Kuker merely "saw" his business decline. Even if we were to find that NAVL negligently caused Kuker emotional trauma and somehow imputed a direct impact from NAVL to Kuker,[11] which we do not, we could not say that an economic loss is sufficiently serious in nature and the resulting emotional trauma is of a kind and extent normally expected to occur in a reasonable person, warranting the imposition of liability. *See id.* at 456. We recognize that an economic loss may cause emotional distress, but cannot compare the loss of a loved one with the loss of an investment, and will not extend *Shuamber*'s holding as Kuker suggests.

Kuker also claims that his allegation falls within a long-recognized exception to the "impact rule" allowed for invasions of legal rights which by their nature are likely to provoke an emotional disturbance, such as fraud, citing *Baker v. American States Insurance Co.* (1982), Ind.App., 428 N.E.2d 1342, 1349–1350, *trans. denied.* Because of our resolution of Comfax and Kuker's claims for fraud under Count IV of their counterclaim, however, this argument is meritless. *See Issue Two.*

Given our supreme court's long-standing reluctance to recognize the tort of intentional infliction of emotional distress in this state, and its only recent recognition of this

---

11. Kuker argues that the accompanying physical injury required to recover for intentional infliction of emotional distress occurred by NAVL causing him to suffer mental and emotional breakdown and eventually slit his wrists. Appellants' Brief at 37. We note that Kuker's interpretation of the physical injury required is incorrect. Even if we were to follow Kuker's attenuated line of causation, the accompanying physical impact must occur prior to or simultaneously with the infliction of emotional distress.

*See Shuamber*, 579 N.E.2d at 456; *see also Cullison*, 570 N.E.2d at 30 (additional physical impact not required to accompany presumed damage in tortious trespass to recover for intentional infliction of emotional distress suffered in course of tortious trespass). Kuker's claim essentially states that his physical injury, slitting his wrists, occurred after his emotional distress; thus, he fails to show the requisite direct impact required.

tort and the tort of negligent infliction of emotional distress in very limited circumstances, we hold that Kuker has not presented facts or inferences supporting a claim which falls within the narrow class of cases in which these torts may offer relief. *See Shuamber*, 579 N.E.2d at 456; *Cullison*, 570 N.E.2d at 31.

*Issue Five*

Finally, Comfax and Kuker claim that the trial court erred in entering summary judgment in NAVL's favor on their counterclaim for punitive damages. We agree with Comfax and Kuker that the trial court applied an incorrect standard in ruling on the claim for punitive damages in the summary judgment setting, but that in any case, because all other issues were properly disposed of by summary judgment, no claims remained on which punitive damages could be assessed. However, this issue may arise on remand at trial of the preserved breach of contract and conversion claims.

■ In ruling on NAVL's motion for summary judgment on Comfax and Kuker's counterclaim requesting punitive damages, the trial court judge stated:

"5. In order to grant the Motion for Summary Judgment on the issue of the availability of punitive damages to COMFAX Corporation and James Kuker upon their Counterclaim this Court must determine that a reasonable jury could *not* find from the evidence presented to the Court, clear and convincing evidence that the conduct of North American Van Lines, Inc., was inconsistent with any hypothesis of innocence of malice, fraud, gross negligence, or oppressiveness, or of willful and wanton misconduct which North American Van Lines, Inc., knew would probably result in injury.

The Court now finds that there is a total lack of such clear and convincing evidence and that a reasonable jury could not find clear and convincing evidence of conduct on the part of North American Van Lines, Inc. that would allow punitive damages to be assessed."

Record at 929. The trial court judge apparently misapplied the clear and convincing

standard applicable at a trial on punitive damages to the summary judgment proceeding. Indiana law is clear that whether the evidence meets the clear and convincing standard is not the proper inquiry on a summary judgment motion. *Chester v. Indianapolis Newspapers* (1990), Ind.App., 553 N.E.2d 137, 140–141, *trans. denied* (appellate court, in reviewing grant of summary judgment, is only concerned with existence of factual questions, not litigant's ability to sustain burden of proof on those issues); *see* IND.CODE § 34–4–34–2 (punitive damages must be proven by clear and convincing evidence to *recover at trial*) (emphasis added).

■ We also note that NAVL's reliance on United States Supreme Court and other federal courts' decisions is misplaced. Appellee's Brief at 45–46. We are not bound by these courts' decisions in construing Indiana law. *See Chester*, 553 N.E.2d at 140–141 (distinguishing jurisdictions, such as federal forums, in which clear and convincing standard is applied at trial and at summary judgment level, from Indiana's rule of applying clear and convincing standard only at trial on merits). Thus, these decisions are irrelevant in construing our law on summary judgment motions. *See id.* Additionally, *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, on which NAVL relies, is inapplicable to this case. *Orkin* involved punitive damages assessed in a trial court's judgment, and not a disposal of such an issue on a summary judgment motion. *Id.* at 1020–1021.

■ Because the issue of punitive damages may arise at trial on the remaining claims of breach of contract and conversion, we briefly review the applicable law. Generally, punitive damages are not recoverable in Indiana for breach of contract. *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, 579, *trans. denied.* In order to recover punitive damages in such a case, the plaintiff must prove by clear and convincing evidence that the defendant's actions in breaching the contract were accompanied by malice, fraud, gross negligence, or oppressive con-

duct and that the defendant's acts "were inconsistent with the hypothesis that the tortious conduct was a result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing." *Id.* (quoting, *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362).[12] The plaintiff must also establish that the public interest will be served by the deterrent effect that an award of punitive damages would have upon the future conduct of the defendant and parties similarly situated. *Id.*

Because the remaining claims which were the subject of the partial summary judgment motion were properly disposed of in NAVL's favor, no claims remain at the summary judgment level on which punitive damages may be assessed. However, if Comfax and Kuker make the requisite showing at the trial on the breach of contract and conversion issues, punitive damages might be awarded. Inasmuch as the trial court improperly applied the clear and convincing standard to the summary judgment motion, such ruling is reversed.

We reverse the ruling on punitive damages, and in all other respects affirm the trial court's decision.

Affirmed in part and reversed in part.

Costs to be assessed Seventy-five percent (75%) against Comfax Corporation and James Kuker, and Twenty-five percent (25%) against North American Van Lines, Inc.

BAKER and BUCHANAN, JJ., concur.

---

**12.** Because we have already determined that NAVL's conduct does not amount to actual or constructive fraud, *see Issue Two,* Comfax and Kuker, to recover punitive damages, must prevail on one of the other bases for such an award.