**Thomas J. TACKET, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, DELCO REMY DIVISION, Defendant.**

**No. IP 89–162 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 21, 1993.

Frank B. Harshey, Merriman & Harshey, Indianapolis, IN, for plaintiff.

Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, IN, for defendant.

## ENTRY

BARKER, District Judge.

The last time this matter was before the Court, the plaintiff was allowed "twenty (20) days to amend his complaint to plead an independent tort of the kind for which Indiana law allows for the recovery of punitive damages." *Tacket v. Delco Remy, Div. of General Motors Corp.*, 818 F.Supp. 1243, 1247 (S.D.Ind.1993). Tacket has since filed his Second Amended Complaint, and the defendant has moved to dismiss two of the three counts therein.

### I. Background

The facts of this case, as reported in *Tacket v. Delco Remy, Div. of General Motors Corp.*, 959 F.2d 650 (7th Cir.1992), are as follows:

Mr. Tacket was hired by General Motors on January 6, 1971, and was employed by Delco Remy (a division of General Motors) for approximately sixteen years. During his time at General Motors, Mr. Tacket rose to the level of senior project engineer. Mr. Tacket was employed pursuant to a written employment contract. Under the terms of the contract, Mr. Tacket's employment was extended "from month to month only on a calendar month basis." R. 7 Ex. A.

While still employed by General Motors, Mr. Tacket filed a defamation suit against his employers. On February 20, 1987, the district court granted General Motors' motion for a directed verdict in the defamation suit;[1] and on March 6, 1987, General Motors fired Mr. Tacket. In a letter dated March 9, 1987, General Motors stated to

---

1. The directed verdict in the companion case was overturned by the Seventh Circuit, a trial was had on Tacket's claims, and Tacket, prevailing at trial, was awarded of $100,000 in damages against General Motors. That award was later reversed on appeal on the grounds that Tacket had failed to demonstrate evidence of a pecuniary injury. *See Tacket v. Delco Remy, Div. of Gen. Motors Corp.*, 937 F.2d 1201, 1207 (7th Cir.1991).

Mr. Tacket that he had been discharged because Mr. Tacket's conduct had "caused him to lose the trust, confidence and respect of his superiors and peers. He had made claims against his management which they believe are groundless. In support of his claims, he made statements about his superiors and peers that management believes were untrue. These circumstances make continuation of his employment not in the best interest of him or the Corporation." R. 7 Ex. B. At the time of his discharge, Mr. Tacket was paid for five days of work in March and for twelve and one-half vacations days. Mr. Tacket's monthly salary at the time of his dismissal was $3,887.88.

*Id.* at 651.

In his Second Amended Complaint, Tacket alleges the following facts:

5. Tacket was an employee of General Motors for seventeen years.

6. Tacket's employment with General Motors was pursuant to a written contract, providing for employment on a calendar month basis.

7. In 1985, General Motors suspected Tacket of involvement with a situation that General Motors considered to be a conflict of interest. As a result, Tacket was suspended from employment by General Motors. Although General Motors returned Tacket from suspension, it never communicated to anyone that Tacket was cleared of wrongdoing.

8. In 1985, Tacket filed suit against General Motors to redress General Motors' defamation of Tacket's reputation.

9. In retaliation for pursuing the defamation lawsuit, General Motors subjected Tacket to a continuous pattern of intentional and outrageous conduct. This outrageous conduct included firing Tacket without just cause on March 6, 1987 in retaliation for pursuing the defamation lawsuit.

Based on these allegations, Tacket asserts three counts against General Motors. In Count I, Tacket alleges that the defendant is liable under a breach of employment contract theory. In Count II, Tacket claims that the defendant breached the employment contract "without just cause, [ ] wrongful[ly], and ... to cause emotional distress" and seeks compensatory emotional distress damages from the same breach of contract alleged in Count I. In Count III, Tacket alleges that the defendant's "conduct" was intentional, outrageous, and done with the intent to cause emotional distress, for which he requests not only compensatory damages, but also punitive damages "in an amount sufficient to punish the Defendant for its wrongful conduct, and to deter the Defendant General Motors Corporation and others similarly situated from such wrongful conduct in the future...."

The defendant moves to dismiss Counts II and III under Fed.R.Civ.P. 12(b)(6), on the grounds that Indiana law does not allow a plaintiff to be compensated for emotional distress damages that flow from a breach of contract. The defendant also argues that Tacket's Intentional Infliction of Emotional Distress claim, a tort, is unavailable as an outgrowth of a breach of contract and is barred by a two-year statute of limitations. In response to those arguments, Tacket claims that emotional damages are available from a breach of contract where the defendant has invaded a legal right which by its nature is likely to provoke an emotional disturbance. He also claims that based on the allegations set forth in ¶ 9 of the Second Amended Complaint, he has sufficiently set forth a tort claim for Intentional Infliction of Emotional Distress. Tacket asserts in his response brief:

> [T]he instant case has evidence that the Defendant made threatening and harassing phone calls to the Plaintiff and others around him who were totally unconnected with his employment. The Defendant had his phone tapped, at his office and at his home, because it might provide some useful evidence that could be used to "get" the Plaintiff. The Defendant intended to retaliate against the Plaintiff by terminating him without cause. This evidence establishes, without any inferential chain, the intent on the part of the Defendant to cause emotional harm to the Plaintiff.

Tacket does not address the defendant's claim that Count III is barred by the statute of limitations. The only reference Tacket makes to the timeliness of this action is that the ¶ 9 allegations "relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c)."

## II. Discussion

### Count II: Emotional Distress Damages

■ This court has previously denied a defense motion for summary judgment on Tacket's emotional distress theory. As this court noted in its denial of summary judgment, an exception to Indiana's impact rule exists where (1) the defendant committed a tort involving the intentional invasion of a legal right which by its very nature is likely to provoke an emotional disturbance, such as a tortious trespass, *Cullison v. Medley*, 570 N.E.2d 27 (Ind.1991), (2) "the defendant by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to the [plaintiff]", *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118 (Ind.Ct.App.1992), or (3) the conduct causing the injury was "inspired by fraud, malice, or like motives and the conduct was intentional." *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991).

The defendant now moves to dismiss Count II claiming that a plaintiff is not entitled to emotional distress damages, the impact rule notwithstanding, under a breach of contract claim—even where the plaintiff alleges that the defendant breached an employment contract "without just cause, [ ] wrongful[ly], and ... to cause emotional distress."

■ In Indiana, a plaintiff may not recover mental anguish damages that flow from a negligent breach of contract. *Plummer v. Hollis*, 213 Ind. 43, 11 N.E.2d 140 (1937). This policy is sound:

> The authorities cited upon the argument leave no doubt in my mind that the amount of damages to be awarded for the breach of contract cannot, consistently with legal principles governing the assessment of damages, be increased on account of mental distress. If mental distress is to be

compensated, the amount of damages should correspond with the degree of suffering. The degree of suffering will depend rather more upon the temperament and physical condition of the injured party that upon the degree of culpability of the wrongdoer. To render fair compensation for the mental anguish of a person of refined ideas and sensitive organization, or to a person whose suffering may have been greatly augmented by nervous debility at the time, would subject the defendant to consequences quite as severe as the rule of vindictive damages applicable in cases of malicious torts, and he would have to pay for his adversary's infirmity, rather than for the natural or probable effect of his own wrongful act or neglect.

*McBride v. Sunset Telephone Co.*, 96 F. 81 (C.C.D.Wash.W.D.1899).

This rule comports with the generally accepted rule stated in § 353 of the Restatement (Second) of Contracts:

> Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a likely result.

Restatement (Second) of Contracts, § 353; *see* 11 Williston, Contracts § 1341 (3rd Ed. 1968). The single comment following § 353 is often cited by cases interpreting this restatement, and is particularly enlightening as applied to the facts of this case:

> *a. Emotional Disturbance* Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure. There are, however, two exceptional situations where such damages are recoverable. In the first, the disturbance accompanies a bodily injury. In such cases the action may nearly always be regarded as one in tort.... In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages

472

concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.

The comment makes clear that § 353 of the Restatements (Second) of Contracts focuses on the nature of the contract, not the type of breach, as to whether emotional damages are available. *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 815 P.2d 1362 (1991) (applying § 353 to a breach of employment contract and finding emotional damages unavailable). "Common examples of the second exceptional situation are contracts 1) between carriers and innkeepers and their passengers and guests; 2) for the carriage or proper disposition of dead bodies; and 3) for the delivery of messages concerning death." *Orono Karate, Inc. v. Fred Villari Studio of Self Defense, Inc.*, 776 F.Supp. 47, 52 (D.N.H. 1991); *see Nitzsche v. Stein, Inc.*, 797 F.Supp. 595, 600 (N.D.Ohio 1992) (emotional damages not available in a breach of employment contract—court found that only twice emotional distress damages were held to be recoverable in any breach of contract setting, and "both cases involved marriage, and in both cases ordinary contract remedies [were] inadequate"); *Thanh Vong Hoai v. Sun Refining & Marketing Co.*, 1991 WL 530756 at *5 1991 U.S.Dist. LEXIS 5977 at *14 (D.D.C. 1991) (applying § 353, court held that "a franchise contract is not a contract of a 'kind' likely to cause serious emotional disturbance. Such include 'contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death.' ").

The breach of contractual agreements and the concomitant loss of profits and other business opportunities is a fact of life in a complex society such as ours where large numbers of financial transactions are consummated every day. While undesirable, the breach of commercial agreements, even where the financial loss is great, does not usually constitute the type of outra-geous conduct envisioned by the Restatement and the case law.

*Price v. Blyth Eastman Paine Webber, Inc.*, 576 F.Supp. 431, 435 (W.D.Pa.1983).

■ Indiana has not directly addressed the issue of the recoverability of emotional damages under an intentional breach of contract claim. Although Indiana has not expressly adopted or rejected § 353, Indiana frequently cites to other provisions of the Restatements (Second) of Contracts, *see, for example, Willie's Constr. Co. v. Baker*, 596 N.E.2d 958, 961 (Ind.Ct.App.1992) (" 'Ordinarily, in a breach of contract case the injured party's damages are measured by the loss in value *to him* of the other's party's failure to perform.' Restatement (Second) of Contracts § 347(a)"), and a review of Indiana law indicates that if the Supreme Court of Indiana were faced with this issue, it would conclude that when an employer breaches an ordinary employment contract (such as the one at bar), even if the employer intended to cause the employee emotional harm in breaching that agreement, emotional distress damages are not recoverable under a breach of contract claim. *See Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975 (Ind.1993); *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d at 127 (in considering a claim of negligent infliction of emotional distress, the court "could not say that an economic loss is sufficiently serious in nature and the resulting emotional trauma is of a kind and extent normally expected to occur in a reasonable person, warranting the imposition of liability"); *Mehling v. Dubois County Farm Bureau Coop. Assn.*, 601 N.E.2d 5, 9 (Ind.Ct.App. 1992) (tort of Intentional Infliction of Emotional Distress is unavailable in a breach of an employment-at-will contract); *Burleson v. Illinois Farmers Ins. Co.*, 725 F.Supp. 1489, 1495 (S.D.Ind.1989) ("in contract actions the defendant's motive or state of mind is of no moment except where punitive damages are sought") (citing Indiana law); *see also Decatur Memorial Hospital v. Connecticut General Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir.1993) ("*Moorman [Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) ] prevents the use

of tort measures of damages in what are really contract cases. *See Rardin v. T & D Machine Handling, Inc.,* 890 F.2d 24, 27–29 (7th Cir.1989). Persons who have entered into consensual arrangements and specified their own duties and remedies need not fear that courts will use tort doctrine to pull the rug out from under them."); *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2nd Cir.1985) ("Emotional and mental distress is generally not compensable in a breach of contract action, *see Boyce v. Greeley Square Hotel Co.,* 228 N.Y. 106, 111, 126 N.E. 647, 649 (1920), particularly in the absence of a physical injury."); *V.S. Int'l, S.A. v. Boyden World Corp.,* 1993 WL 59399 at *11, 1993 U.S.Dist. LEXIS 2586 at *31–32 (S.D.N.Y. 1993) ("It is axiomatic under New York law that, in a breach of contract action, an individual generally cannot recover for emotional and mental distress, social humiliation, wounded feelings, serious anxiety, or public ridicule allegedly resulting from the breach."); *Nitzsche v. Stein,* 797 F.Supp. at 600 (emotional damages not recoverable from breach of employment contract); *United States v. Long,* 687 F.Supp. 343 (S.D.Ohio 1987) (same); *Wise v. General Motors Corp.,* 588 F.Supp. 1207, 1211–12 (W.D.Va.1984) (concluding that Virginia would adopt the rule set forth in § 353, the district court found emotional damages under a breach of warranty claim unavailable: "[T]he generally accepted rule among the various jurisdictions which have address the issue is that damages for emotional distress are excluded, except where there is bodily impact or where emotional distress is likely to result").

In *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* the Supreme Court of Indiana held that punitive damages are not available under a breach of contract claim, stating that where the conduct of the breaching party independently establishes the elements of a common law tort and where the proven tort is of the kind for which punitive damages are allowed, punitive damages may be awarded on the tort claim, but not on the breach of contract claim. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d at 981 (citing *Vernon Fire & Casualty v. Sharp,* 264 Ind. 599, 349 N.E.2d 173, 180 (1976)). The *Miller Brewing* court stat-

ed that the reasons for not allowing punitive damages under a breach of contract claim are several. The Court held that punitive damages, "designed to punish the wrongdoer and to dissuade him and other from similar conduct in the future," are not compensatory and create an undesirable windfall for the non-breaching party. Further, not allowing punitive damages "furthers the public interest in recognizing the existence of *bona fide* business disputes and separating them from breaches of contract achieved in a tortious manner.... 'The public interest cannot be served by any policy that deters resort to the courts for the determination of bona fide business disputes,' *Travelers,* 442 N.E.2d at 363, or prohibits one party to a contract from exercising his common law rights to breach a contract and pay a rightful amount of compensatory damages." *Id.* at 983–84 (citing *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349 (Ind.1982)).

Although the Court did not address the issue of emotional damages in *Miller Brewing,* it appears that the Supreme Court of Indiana would, for many of the same reasons stated therein, prohibit emotional damages in breach of contract claims. A rule prohibiting emotional damages under a breach of contract claim "furthers the public interest in recognizing the existence of *bona fide* business disputes and separating them from breaches of contract achieved in a tortious manner" and would encourage one party to a contract to "exercis[e] his common law rights to breach a contract and pay a rightful amount of compensatory damages." *Id.* As the Court stated in *Miller Brewing,* "unlike torts, where the duty is owed to all and a broad measure of damages is available, contract obligations are owed only to the parties to the contract and damages are limited to those reasonably within the expectations of the parties when the contract is made." *Id.*

To allow emotional damages under a breach of contract claim where the defendant allegedly breached a contract with the intent to cause emotional distress would be tantamount to recognizing the tort of tortious breach of contract, a cause of action which has been expressly rejected in Indiana. *Comfax Corp. v. North American Van Lines,*

*Inc.*, 587 N.E.2d at 123–24. In Count II, the plaintiff attempts to establish a hybrid tort/contract claim by asserting breach of contract-type conduct with tort-type repercussions. However, as Indiana has demonstrated a "long-standing reluctance" to recognize the tort of Intentional Infliction of Emotional Distress, *see Comfax*, at 127–128, as well as an unwillingness to mesh tort remedies with contract claims, *see Miller Brewing Co. v. Best Beers of Bloomington, Inc., supra*, this court declines to expand Indiana law to accept either the new tort of tortious breach of contract, the tort of Intentional Infliction of Emotional Distress in the contract setting, or the new and additional remedy of emotional damages under the type of intentional breach of employment contract claim asserted herein.

■ Tacket claims in his Second Amended Complaint, "The wrongful termination of an employment contract naturally and logically causes emotional distress to the wronged party." However, this court finds that emotional damages are generally not recoverable under a breach of contract claim, and an employment contract of the type alleged herein is not the type of contract which, when breached, would likely cause a serious emotional disturbance of the kind for which there is an exception to the general rule. Count II, a request for emotional damages from a breach of employment contract, does not state a claim upon which relief can be granted, and Count II must therefore be dismissed.

### Count III: Intentional Infliction of Emotional Distress

The court lastly addresses the issue of whether Tacket's claim for Intentional Infliction of Emotional Distress is based on conduct that occurred prior to February 17, 1987, that is, more than two years after Tacket filed this action. At this juncture, the court cannot say for sure: Tacket did not respond to the defendant's statute of limitations assertion in its Response To Defendant's Motion to Dismiss, perhaps because the defendant had allocated only one sentence (and no citations) at the end of its 14 page brief to address this issue. The defendant has, however, briefed this issue in its Reply to Tacket's Response, in which it lays out the statute of limitations argument and citing to evidence outside the complaint, alleges that Tacket's claims for Intentional Infliction of Emotional Distress is not based on conduct occurring within the relevant time frame. *See Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d at 127 ("To recover under such a claim, a plaintiff must show that the defendant by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to the [plaintiff].")

Tacket's tort claim may or may not be barred by the applicable statute of limitations. This issue, however, has not been sufficiently briefed. Further, because the defendant relied on evidence outside the complaint, the court converts that part of the defendant's motion to dismiss dealing with Count III into one for summary judgment, and Tacket is hereby ordered to respond to the arguments set forth in the defendant's Reply brief and demonstrate to the court why Indiana's two-year statute of limitations for Intentional Infliction of Emotional Distress does not bar Count III. Tacket is ordered to respond to this order within twenty (20) days of the date of this entry; a failure to do so will be deemed as an admission that Count III is barred under the applicable statute of limitations, and the Court will so rule.

### III. Conclusion

Accordingly, the motion to dismiss, as it pertains to Count II, is GRANTED. The remainder of that motion to dismiss is taken under advisement pending a response from Tacket regarding the statute of limitations issue.

It is so ORDERED.