Leo H. MEYER and Cheryl D. Meyer, Appellants–Defendants,

v.

MARINE BUILDERS, INC., Appellee–Plaintiff,

and

Winston Knauss, James G. Vogt, Jr., Nancy H. Vogt, and Chase Manhattan Mortgage Company, Appellees–Defendants.

No. 10A01–0304–CV–123.

Court of Appeals of Indiana.

Sept. 29, 2003.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, IN, Attorney for Appellants.

Craig D. Doyle, Mark S. Gray, Doyle & Friedmeyer, P.C., Indianapolis, IN, for James G. Vogt, Jr. and Nancy H. Vogt.

Ernest W. Smith, Smith, Bartlett, Heeke, Carpenter, Thompson & Fondrisi, LLC, Jeffersonville, IN, for Marine Builders, Inc.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants Leo and Cheryl Meyer (collectively, the "Meyers") appeal the trial court's denial of their motion for summary judgment and the trial court's grant of summary judgment in favor of Appellees James and Nancy Vogt (collectively, the "Vogts"), defendants below, and Marine Builders, Inc. ("MBI"), plaintiff below. We affirm.

### Issues

The Meyers raise several issues in their challenge to the trial court's entry of summary judgment, which we consolidate, reorder, and restate as:

I. Whether the trial court abused its discretion by denying the Meyers' motion to strike portions of two affidavits;

II. Whether a prior agreed judgment between the parties and/or their privies bars litigation of the disputed issues pursuant to the doctrine of res judicata;

III. Whether the trial court erred by reforming the warranty deed for the property in dispute because the Vogts did not present clear and convincing evidence that reformation was appropriate; and

IV. Whether the Meyers' Warranty Deed has priority over the Vogts'[1] pursuant to Indiana Code Section 32–21–4–1.

### Facts and Procedural History

#### I. Background

The relevant designated facts follow. The Meyers and the Vogts own property in a residential development known as Shore Acres Subdivision ("Shore Acres"). The residential property owned by the Meyers is located at 407 Shore Acres Drive (the "Meyers' Property"). The Vogts' residential property is located at 406 Shore Acres Drive (the "Vogts' Property").

#### II. Conveyance of Property from Knauss to MBI

Prior to April of 1990, Fred J. Kunz, Jr., ("Kunz") owned certain real property in

---

1. In their appellants' brief, the Meyers assert that their Warranty Deed has priority over MBI's Warranty Deed. However, we believe that the Meyers' argument is that their Warranty Deed has priority over the Vogts' Warranty Deed.

Shore Acres, which was contiguous to a road owned by MBI. On April 3, 1990, MBI, Kunz, and several other property owners entered into an Agreed Judgment. In brief and in relevant part, the Agreed Judgment: (1) extended Kunz's lot lines in Shore Acres up to the present location of MBI's road; and (2) granted MBI an easement over the extension of Kunz's lot lines.[2] On July 21, 1997, Kunz conveyed the real estate to Winston Knauss ("Knauss"). On June 18, 1999, MBI purchased a parcel of the real estate from Knauss, which is described, in relevant part, as:

> Being part of Lots 25 and 27 and being all of Lot 26 and Part of Survey Number 7 of the Illinois Grant, Clark County, Indiana, more particularly described as follows:
>
> Beginning at the southwest corner of lot number 6, Thence N 72 degs. W, 92.15 feet to a PK rail, The True Point of Beginning for the following described tract; Thence N 72 degs. W, 127.85 feet to a point; Thence N 18 degs. E, 100.00 feet to a point; thence S 72 degs E, 127.85 feet to point marked by a PK nail; Thence S 18 degs. W, 100.00 feet to point, the true of beginning, containing 0.2935 acres more or less. Subject to a roadway easement as described in Deed Drawer 2, Instrument No. 6566.

Appellants' App. at 6. The Warranty Deed for this parcel of real estate was recorded on June 24, 1999.

2. The pertinent provisions of the Agreed Judgment will be further scrutinized in the Analysis section of this opinion.

3. The Warranty Deed incorrectly identifies the seller of 407 Shore Acres Drive as William, as opposed to Winston, Knauss. The Warranty Deed also describes 407 Shore Acres Drive as being a part of Lot 6. On December 11, 2000, a Deed of Correction was executed and recorded, which correctly identifies the seller of 407 Shore Acres Drive as

### III. Conveyance of the Meyers' Property: 407 Shore Acres Drive

On August 2, 2000, Knauss conveyed the remainder of his interest in the real estate, i.e., property located at 407 Shore Acres Drive, to the Meyers.[3] The Meyers' property is more specifically described as:

> Being a part of Lots [8[4]], 12, 14, 25, and 27, all of Lots 6, 7, 13, and 26 and part of a 25 foot wide vacated roadway (see miscellaneous Record Book 36, Page 195) in Shore Acres Subdivision as shown in Plat Book 6, Page 16 of the Clark County, Indiana Records and being further described as:
>
> Beginning at the southwestern corner of said Lot 6; Thence N. 72 W., 245 feet to a steel pin on southeast right-of-way line of a 31.5 foot wide ingress and egress easement; Thence N. 18 E., along said southeast line, 100 feet; Thence S. 72 E., 176.42 feet to a steel pin; Thence N. 18 degrees E., 5 feet to a steel pin; Thence S. 72 degrees E., 298.5, more or less, to the line dividing the State of Indiana and the Commonwealth of Kentucky; Thence Southwestwardly along said dividing line, 105 feet more or less, to the southeastern corner of the said lot 6, Thence N. 72 degrees W., along the southwestern line of said lot 230 feet, more or less, to THE PLACE OF BEGINNING. Containing 1.12[5] acres,

"Winston" Knauss and describes the property as being a part of Lot 8. Appellants' App. at 12–13.

4. See supra note 1.

5. From the copy of the Warranty Deed contained in the Appellants' Brief, we were unable to discern the whole number associated with the acreage amount. However, the Deed of Correction lists the acreage as 1.12.

more or less, and being subject to all easements of record.

*Id.* at 64. The Warranty Deed for the Meyers' Property, which was recorded on August 8, 2000, specifically excludes the property previously conveyed by Knauss to MBI.

### IV. Conveyance of the Vogts' Property: 406 Shore Acres Drive

On August 14, 2000, MBI conveyed a parcel of the property that it acquired from Knauss, i.e., property located at 406 Shore Acres Drive, to the Vogts. The Vogts' Property is more particularly described as:

A part of Lot 25 and part of Lot 26 and part of Lot 13 and part of Lot 14 of Shore Acres. Plat Book 6, Page 16, Clark County, Indiana, more particularly described as follows: Commencing at an iron pin marking the Northwest corner the plat of Shore Acres and running thence South 72 East along the Southern Line of Church Street for a distance of 31.5 feet to the Northwest Corner of Lot 29 of Shore Acres; thence running 18 West along the Western line of Lots 29, 28, 27 and 26 for a distance of 170 feet and 5/8″ rebar wit I.D. cap (T.J. Boofter, L.S.), THE TRUE PLACE OF BEGINNING OF THE TRACT HEREIN DESCRIBED:

Thence severing Lot 26 and running South 72 East for a distance of 132.5 feet to a spike in Lot 13 and in the center of a certain 25 foot wide easement; thence running South 18 West along the center of said 25 foot wide easement for a distance of 50 feet to a spike in Lot 14; thence running North 72 West (crossing into Lot 25 at 12.5 feet) for a distance of 132.5 feet to a rebar in the West line of Lot 25; thence running North 18 East along the Western line of Lots 25 and 26 for a distance

of 50.0 feet to a 5/8″ rebar with I.D. cap, THE TRUE PLACE OF BEGINNING, subject to an easement in favor of the residents of Shore Acres, said easement being for ingress and egress and for the installation and maintenance of public utilities, said easement being 25 feet in width and the centerline of which easement is coincident with the Eastern line of the above-described tract.

Appellants' App. at 10. The Warranty Deed for the Vogts' Property was recorded on August 14, 2000.

### V. Commencement of the Present Litigation

As described in the Warranty Deeds, the Vogts' Property includes a parcel of real estate that is also included in the Meyers' Property description. In particular, the Warranty Deeds for both the Vogts' and the Meyers' Properties, as executed and recorded, purport to convey the same parcel of land located in parts of Lots 25 and 26.

On March 26, 2002, after discovering that the two warranty deeds include a parcel of the same property, MBI filed an Amended Verified Complaint requesting that the trial court quiet title in its name and revise the legal description of the property represented by the Warranty Deed between MBI and Knauss, in part, as follows:

Being *all of Lot 26 and* part of Lots *12, 13, 14,* 25 and 27 ... *and being further described* as follows:
Beginning at the southwest corner of lot number 6, Thence N 72 degs. W, *117.15* feet to a PK rail, The True Point of Beginning for the following described tract; Thence N 72 degs. W, 127.85 feet to a point; Thence N 18 degs. E, 100.00 feet to a point; thence S 72 degs E, 127.85 feet to point marked by a PK nail; Thence S 18 degs. W, 100.00 feet to

point, the true of beginning, containing 0.2935 acres more or less. Subject to a roadway easement as described in Deed Drawer 2, Instrument No. 6566.

*Id.* at 22 (emphasis added).[6] On April 9, 2002, in their Answer to the Amended Complaint, the Meyers asserted several defenses including, in relevant part, that: (1) MBI's claim was barred by the statute of frauds; (2) MBI's claim was barred pursuant to Indiana Code Section 32–1–2–16,[7] because the Meyers' interest in the property was superior to any interest claimed by MBI; (3) MBI has no standing to bring a cause of action because it no longer holds title to the real estate subject to the controversy; and (4) MBI's claim was barred by the doctrine of res judicata. *Id.* at 25–26. On August 14, 2002, the Vogts filed a cross-claim requesting that the trial court quiet title in their name and reform the legal description of the Vogts' Property.

On October 21, 2002, the Vogts filed a motion for summary judgment. Attached to their motion were the affidavits of Thomas J. Boofter ("Boofter Affidavit") and David W. Evanczyk ("Evanczyk Affidavit"). In response, the Meyers filed a cross-motion for summary judgment and an objection to the Vogts' motion for summary judgment. The Meyers also filed motions to strike portions of the Boofter and the Evanczyk Affidavits. In addition, attached to the Meyers' cross motion for summary judgment was an affidavit of Mr. Meyer ("Meyer Affidavit"). On December 26, 2002, MBI filed a motion to join in the Vogts' motion for summary judgment, which the trial court granted.

## VI. The Trial Court's Disposition of all Pending Motions

On January 9, 2003, after holding a hearing on the motion and cross-motion for summary judgment, the trial court granted summary judgment to the Vogts and MBI and denied the Meyers' motion for summary judgment. In so doing, the trial court denied the Meyers' motion to strike certain portions of the Boofter Affidavit. However, the trial court granted the Meyers' motion to strike the Evanczyk Affidavit, "only as to the second full sentence of paragraph 6 and that shall read 'I was satisfied that the drawing of the tract to be sold was accurate.'" *Id.* at 103. The trial court also denied the Vogts' motion to strike the Meyer Affidavit.

The trial court further reformed the Warranty Deed from Knauss to MBI as follows:

A part of Lot 25, all of Lot 26 and a part of Lot 27, and part of Lots 12, 13 and 14 of Shore Acres, ... more particularly described as follows:

Commencing at an iron pin marking the Northwest corner of the plat of Shore Acres and running thence South 72 East along the Southern Line of Church Street for a distance of 31.5 feet to the Northwest corner of Lot 29 of Shore Acres; thence running South 18 West along the Western line of Lots 29, 28 and 27 for a distance of 120 feet to a point, the TRUE PLACE OF BEGINNING of the tract herein described:

Thence severing Lot 27 and running South 72 East for a distance of 132.5 feet to a spike in Lot 12 and in the center of a certain 25 foot wide easement (roadway right-of-way); thence South 18 West along the center of said

---

**6.** The underlined portions of the property description reflect the proposed changes to the Warranty Deed.

**7.** In 2002, the Indiana Legislature recodified Indiana Code Section 32–1–2–16 as Indiana Code Section 32–21–4–1.

25–foot wide easement for a distance of 100 feet to a spike in Lot 14; thence running North 72 West (crossing into Lot 25 at 12.5 feet) for a distance of 132.5 feet to a rebar in the West line of Lot 25; thence running North 18 East along the Western line of Lots 25, 26 and 27 for a distance of 100 feet to the true place of beginning.

*Id.* at 106. It is from this judgment that the Meyers now appeal.[8]

## Discussion and Decision

### I. Summary Judgment Standard of Review

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has

the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000). Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind. Ct.App.2000).

### II. Analysis

#### A. The Meyers' Motion to Strike

■ As a preliminary matter, we address the Meyers' contention that the trial court abused its discretion when it denied their motion to strike portions of the Boofter and Evanczyk Affidavits. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Richardson v. Calderon,* 713 N.E.2d 856, 860 (Ind.Ct.App.1999). We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances. *Id.* Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial

8. On July 17, 2003, MBI joined in the Vogts'   appellants' brief.

Rule 56(E), which provides, in relevant part: "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Generally, "[a]n affidavit may not contain conclusions of law, and portions of an affidavit that do so will not be considered in ruling on a motion for summary judgment." *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind.Ct. App.2002).

Here, the Meyers maintain that the trial court abused its discretion by refusing to strike portions of the Boofter and Evanczyk Affidavits that contained beliefs and conclusory statements. We address the pertinent portions of each affidavit separately.

### 1. The Boofter Affidavit

The Meyers take issue with the following portions of the Boofter Affidavit:

6. I examined a drawing of a parcel of real property prepared by Elstone & Luther, Land Surveyors dated June 4, 1999, *which drawing the basis for the legal description which appears in the deed from Knauss to [MBI.] ...*

\* \* \* \* \* \*

8. The Elstone & Luther drawing also depicts an iron pin found (existing), as the point of beginning, and two P.K. nails set in the middle of the roadway right-of-way. *It appears from the drawing* that Elstone & Luther set pins or stakes to mark the Westerly edge of the ingress-egress easement, thus marking the 4 corners of the subject parcel surveyed and drawn.

\* \* \* \* \* \*

12. *The starting point identified in the Elstone & Luther legal description was mis-identified [sic] as the Southwest corner of Lot 6.* As a result of this mistake, the metes-and-bounds legal description developed by Elstone & Luther is not congruent with the parcel staked by them and depicted in their drawing.

Appellants' App. at 91–92 (emphasis added). The Meyers argue that the emphasized portions of the Boofter Affidavit are not grounded in fact, but rather, in speculation. As such, the Meyers' argument continues, the emphasized portions are improper material for an affidavit supporting a summary judgment motion and should have been stricken by the trial court. We disagree.

First, we observe that, on appeal, the Meyers do not dispute Boofter's professional credentials and other qualifications as a land surveyor. Indeed, in the portion of the Boofter Affidavit that the Meyers do not challenge, Boofter affirms that he is a registered land surveyor and routinely performs surveys of real property. Thus, Boofter qualifies as an expert witness. *See, e.g., Romine v. Gagle*, 782 N.E.2d 369, 382 (Ind.Ct.App.2003) (acknowledging that a professional land surveyor who owns his own land surveying business is an expert); *see also Longabaugh v. Johnson*, 163 Ind. App. 108, 111, 321 N.E.2d 865, 867 (1975) (recognizing that a surveyor was an expert witness).

Indiana Evidence Rule 702 governs expert testimony and provides that:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

As an expert witness, Boofter was able to testify in the form of an opinion. Thus,

the disputed portions of the Boofter Affidavit were admissible under Indiana Evidence Rule 702. Accordingly, the trial court did not abuse its discretion by denying the Meyers' motion to strike portions of the Boofter Affidavit that contain opinion testimony.

### 2. The Evanczyk Affidavit

■ The Vogts also attached the Evanczyk Affidavit to their motion for summary judgment. Evanczyk is the president of MBI and, while acting in that capacity, he personally negotiated with Knauss for the purchase of the MBI property. The Meyers take issue with the following portions of the Evanczyk Affidavit:

8. ... Based on the foregoing, *I believe that the location of the tract* described by metes and bounds within the legal description is 25 feet further East than that contemplated by [Knauss] and me in our sale transaction.

9. ... *I now believe* that the metes and bounds portion of the legal description drawn by Elstone & Luther does not describe the tract which appears in the drawing.

Appellants' App. at 96–97 (emphasis added and internal citations omitted).

The Meyers contend that the trial court abused its discretion by refusing to strike the emphasized portions of the Evanczyk Affidavit because they express opinions and conclusions not grounded in fact and because they constitute inadmissible hearsay. Evanczyk is not a land surveyor or an expert witness. Rather, he is a lay witness and, as such, is generally not permitted to provide opinion testimony.

■ However, Indiana Evidence Rule 701 provides that:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

An opinion under Indiana Evidence Rule 701 is rationally based, for purposes of the rule, if it is one that a reasonable person normally could form from the perceived facts. *Mariscal v. State,* 687 N.E.2d 378, 380 (Ind.Ct.App.1997). In addition, an opinion is helpful, for purposes of the rule, if the testimony gives substance to facts, which were difficult to articulate. *Id.*

In the present case, the controversial portions of the Evanczyk Affidavit meet the requirements of Indiana Evidence Rule 701 because the opinions expressed are ones that a reasonable person could normally form from the perceived facts. In particular, in the unchallenged portions of his affidavit, Evanczyk affirms that:

3. During 1999 I negotiated with [Knauss] to purchase a tract approximately three tenths of an acre, in Shore Acres. The tract ... extended from the edge of the 31.5 foot ingress/egress easement to the Ohio River. I made an agreement to purchase that portion of that real estate that extended from the easement to the center of Shore Acres Drive.

\* \* \* \* \* \*

5. [Knauss] and I visited the property, and walked and discussed its dimensions together as part of our negotiation for the sale to [MBI.]

6. Both [Knauss] and I viewed the drawing of the property prepared by Elstone & Luther before the sale was consummated. [I was satisfied that the drawing of the tract to be sold was

accurate.[9]] . . .

7. [MBI] paid consideration for and intended to receive a tract of land approximately 100 feet wide, extending from the edge of the 31.5 foot ingress/egress easement to the center of Shore Acres Drive. That tract would include all of Lot 26, and parts of Lots 25 and 27 in the original plat of Shore Acres Drive.

8. Now, I am informed and believe there is a blunder in the legal description written by Elstone & Luther. . . .

Appellants' App. at 95–97.

Evanczyk's undisputed perceived facts could lead a reasonable person to express the opinion that "the metes and bounds portion of the legal description drawn by Elstone & Luther does not describe the tract which appears in the drawing." *Id.* at 97. They could further prompt a reasonable person to conclude that "the location of the tract described by metes and bounds within the legal description is 25 feet further East than that contemplated by [Knauss] and [Evanczyk] in [the] sale transaction." *Id.* at 96–97. Accordingly, the controversial portions of the Evanczyk Affidavit that constitute opinion testimony are rationally based upon the perception of Evanczyk. They are also helpful in providing a clear understanding of Evanczyk's testimony. As such, the trial court did not abuse its discretion by denying the Meyers' motion to strike the controversial portions of the Evanczyk Affidavit.

*B. The Agreed Judgment: Res Judicata*

▮ The Meyers next argue that the trial court's entry of summary judgment in favor of the Vogts and MBI was erroneous because the Agreed Judgment served "as res judicata against portions of the current action." Appellants' Br. at 9. The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Scott v. Scott,* 668 N.E.2d 691, 699 (Ind.Ct.App.1996). The principle of res judicata is divided into two distinct branches: claim preclusion and issue preclusion. *Eichenberger v. Eichenberger,* 743 N.E.2d 370, 374 (Ind.Ct.App. 2001). Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id.* Here, the Meyers' challenge to the trial court's entry of summary judgment relies upon claim, as opposed to issue, preclusion.

The prior action upon which the Meyers rely to support their contention that res judicata bars the Vogts' and MBI's claim is the Agreed Judgment between several parties, including MBI and Kunz. The Agreed Judgment, which was entered on April 3, 1990, concerned the placement of a road easement owned by MBI. The pertinent provisions of the Agreed Judgment provides as follows:

\* \* \* \* \* \*

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED by [the trial court] that:

"[Knauss] and I were each satisfied that the drawing of the tract to be sold was accurate." Appellants' App. at 96.

9. In partially granting the Meyers' motion to strike, the trial court modified this sentence in the Evanczyk Affidavit. Before the modification, the sentence provided as follows:

8. Any rights that ... [Kunz] ... [his] successors, heirs and assigns have regarding the [MBI's] road or its present location ... are hereby terminated.

9. ... The lines of lot nos. 28 and 29 and part of lots nos. 25, 26 and 27 owned by [Kunz] are hereby extended into the "Easement for Ingress and Egress" ... up to the present location of [MBI's] road and fee simple title to said real estate is quieted in [Kunz. MBI] its successors, heirs and assigns are hereby granted an easement over the said extension of the real estate of ... [Kunz, his] successors, heirs and assigns for the purpose of complying with any sight and sound barrier required by the U.S. Army Corps of Engineers. [MBI] shall not dispute with ... [Kunz] the present location of [his] lot lines in Shoreacres which run in the east-west direction and perpendicular to the Ohio River.

\* \* \* \* \* \*

11. This [A]greed [J]udgment is the settlement of disputed claims between the parties hereto. Said [A]greed [J]udgment shall in no way affect any rights or claims [MBI] may have against other landowners in Shoreacres or to those portions of the "Easement for Ingress and Egress" which are unaffected by this [A]greed [J]udgment.

Appellants' App. at 16–17.

Although MBI and Kunz, i.e., the Meyers' and the Vogts' predecessor in interest, were subject to the Agreed Judgment, the doctrine of res judicata does not operate, on these facts, to bar the present litigation. The Agreed Judgment merely extended Kunz's property up to the road owned by MBI and, simultaneously, granted MBI an easement over the extension. The claim of who owned the disputed parcel of property, i.e., a parcel that includes Kunz's extended lot lines, was not, and could not have been, addressed in the Agreed Judgment. At the time of the Agreed Judgment, Kunz owned the disputed parcel of property free of any cloud of title. Thus, the doctrine of res judicata does not apply to the present litigation.

### C. Reformation: Warranty Deed Between Knauss and MBI

The Meyers also contend that the trial court erroneously reformed the Warranty Deed between Knauss and MBI because the Vogts failed to prove that such reformation was necessary by clear and convincing evidence. Reformation, when granted in equity, overcomes the Statute of Frauds and the presumption that the written instrument expresses the parties' intentions. *Colbo v. Buyer*, 235 Ind. 518, 528, 134 N.E.2d 45, 50 (1956). Reformation also has the potential to affect others beyond any immediate dispute via the recording system. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 160 (Ind. 1994). Accordingly, our supreme court has held that to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence. *Id.* A party seeking reformation must further "show the original intent or agreement of the parties by clear and convincing evidence." *Id.*

Initially, however, we observe that Indiana courts apply the clear and convincing standard only at a trial on the merits. *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 128 (Ind.Ct.App.1992). Indeed, Indiana law is clear that whether the evidence meets the clear and convincing standard is not the proper inquiry on a summary judgment motion because such inquiry merely invites a weighing of the evidence. *Chester v. Indianapolis Newspapers, Inc.*, 553 N.E.2d 137, 140–141 (Ind.

Ct.App.1990) (noting that, when reviewing a grant of summary judgment, an appellate court is only concerned with the existence of factual questions, not litigant's ability to sustain burden of proof on those issues); *see also Bandido's, Inc. v. Journal Gazette Co., Inc.,* 575 N.E.2d 324, 327 (Ind.Ct.App.1991) (noting that to ask the trial court to find that the plaintiffs have been unable to prove their case is to request the trial court to weigh evidence, which is not the function of a trial court on a motion for summary judgment), *but see Heeb v. Smith,* 613 N.E.2d 416, 420 (Ind. Ct.App.1993) (suggesting that the modern approach is that a trial court must take a heightened standard of proof into account when ruling on a motion for summary judgment, particularly with respect to a media defendant). Consequently, the Vogts were not required to prove the necessity of reforming the Warranty Deed between Knauss and MBI by clear and convincing evidence at the summary judgment stage of the proceedings. *See, e.g., Chester,* 553 N.E.2d at 140–141. Thus, the question before us becomes whether the trial court erred by reforming the Warranty Deed in dispute.

■ Reformation is "an extreme equitable remedy to relieve the parties of mutual mistake or of fraud." *Estate of Reasor,* 635 N.E.2d at 158 (citations omitted). The remedy of reformation is extreme because written instruments are presumed to reflect the intentions of the parties to those instruments. *Id.* As such, in Indiana, courts may reform written contracts only if: (1) there has been a mutual mistake; or (2) one party makes a mistake while the other party commits fraud or inequitable conduct. *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269, 1275 (Ind.Ct.App.2001). Because the Meyers do not allege that a fraud occurred, we turn our analysis to whether a mutual

mistake occurred. A mutual mistake arises if "there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended." *Plumlee v. Monroe Guar. Ins. Co.,* 655 N.E.2d 350, 356 (Ind.Ct.App. 1995). However, reformations for mutual mistakes are only available if they are mistakes of fact, as opposed to mistakes of law. *Gierhart v. Consol. Rail Corp.-Conrail,* 656 N.E.2d 285, 287 (Ind.Ct.App. 1995). In addition, "equity should not intervene and courts should not grant reformation where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms." *Id.*

■ Moreover, in a reformation action, it is the intent of the parties that controls. *Estate of Reasor,* 635 N.E.2d at 161. To determine the true intent of the parties, we may look to their conduct during the course of the contract. *Peterson v. First State Bank,* 737 N.E.2d 1226, 1229–30 (Ind.Ct.App.2000). With this law as our guide, we now address the issue of whether the trial court erroneously reformed the Warranty Deed from Knauss to MBI.

Here, the Meyers argue that the designated record is devoid of any evidence demonstrating that Knauss and MBI were mutually mistaken about the property description contained in the Warranty Deed. We disagree. The Evanczyk Affidavit, which was properly designated to the Vogts' motion for summary judgment, provides, in relevant part, as follows:

3. During 1999 I negotiated with [Knauss] to purchase a tract approximately three tenths of an acre, in Shore Acres. The tract ... extended from the edge of the 31.5 foot ingress/egress easement to the Ohio River. . . .

  \*　\*　\*　\*　\*　\*

5. [Knauss] and I visited the property, and walked and discussed its dimensions together as part of our negotiation for the sale to [MBI.]

6. Both [Knauss] and I viewed the drawing of the property prepared by Elstone & Luther before the sale was consummated.

7. [MBI] paid consideration for and intended to receive a tract of land approximately 100 feet wide, extending from the edge of the 31.5 foot ingress/egress easement to the center of Shore Acres Drive. That tract would include all of Lot 26, and parts of Lots 25 and 27 in the original plat of Shore Acres Drive.

Appellants' App. at 95–97. From these excerpts, it is clear that MBI's intent in executing the Warranty Deed with Knauss was to purchase the parcel of real estate in dispute, i.e., a parcel of land that extends to and borders the easement for ingress and egress. It is also clear from these portions of the Evanczyk Affidavit that, prior to executing the Warranty Deed, Knauss and Evanczyk walked along the property together and discussed the dimensions of the property.

Moreover, the Evanczyk Affidavit demonstrates that the contracting parties relied upon the land survey prepared by Elstone & Luther when they executed the Warranty Deed. However, the Boofter Affidavit, which was also attached to the Vogts' motion for summary judgment and properly designated to the trial court, reveals that Boofter, a land surveyor, followed "the metes-and-bounds description in the Knauss-to-[MBI] deed." *Id.* at 91. In so doing, Boofter discovered that "[i]f the calls and distances set out in the Elstone–Luther legal description are traced from the Southwest corner of Lot Number 6, then the resulting parcel does not reach the line of the ingress-egress easement on

the West...." *Id.* at 91–92. Moreover, when Boofter personally inspected the land, he found that "[t]he starting point identified in the Elstone & Luther legal description was mis-identified [sic] as the Southwest corner of Lot 6," and as a result, "the metes-and-bounds legal description developed by Elstone & Luther is not congruent with the parcel staked by them and depicted in their drawing." *Id.* at 92–93. Accordingly, the designated evidence reveals that the legal description contained in the survey performed by Elstone & Luther and the parcels staked by them do not dovetail.

Although the survey performed by Elstone & Luther is prima facie evidence of the lot lines intended by Knauss and MBI when they executed the Warranty Deed, its "legal effect is merely to furnish one species of evidence, which may or may not be material, in the determination of a question of title, and which may be entirely controlled and overcome by evidence of another kind." *Spacy v. Evans*, 152 Ind. 431, 433–34, 52 N.E. 605, 606 (1899). The evidence of another kind, in this case, reflects that the Elstone & Luther survey was inaccurate.

We further note that an inaccurate survey may go undetected by interested parties, who are not professional land surveyors or otherwise accustomed to reviewing land surveys, until a subsequent survey reveals the error. Such is the case here. Although Knauss did not testify as to whether he intended to convey the parcel of property in dispute to MBI when the parties executed the Warranty Deed, the designated evidence is sufficient to establish Knauss's intent. Because Knauss and MBI, through its agent Evanczyk, both relied upon the inaccurate survey and because the resulting Warranty Deed does not express the contracting parties' intent, a mutual mistake occurred in the execution

of the Warranty Deed as a matter of law. Accordingly, the trial court properly reformed the Warranty Deed between Knauss and MBI to more accurately reflect the contracting parties' intent.[10] As such, we find no error.[11]

### D. Indiana Code Section 32–21–4–1: Indiana's "Race–Notice" Statute

Lastly, the Meyers argue that the trial court erroneously entered judgment in favor of the Vogts and MBI because the Vogts' Warranty Deed is void pursuant to Indiana's race-notice statute. Indiana Code Section 32–21–4–1 provides that:

(a) A:

(1) conveyance or mortgage of land or of any interest in land; and

(2) a lease for more than three (3) years; must be recorded in the recorder's office of the county where the land is situated.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

The purpose of the recording statute is to provide protection to subsequent purchasers, lessees, and mortgagees. *Szakaly v. Smith*, 544 N.E.2d 490, 491 (Ind.1989). Instruments will have priority according to the time of the filing thereof. *Id.* A record outside the chain of title does not provide notice to bona fide purchasers for value. *Id.* However, a landowner will be held to have constructive notice of any instrument recorded within his or her chain of title. *McIntyre v. Baker*, 660 N.E.2d 348, 352 (Ind.Ct.App.1996).

The present case does not involve a party's failure to properly record a conveyance or lease. Rather, the present dispute involves whether a deed that was properly recorded, but improperly described the property because of a mutual mistake, can be reformed to more accurately reflect the parties' intent, even if such reformation may affect a subsequent landowner's interest. We have already held that it can. *See supra* Part II.C. Indeed, as previously mentioned, reformation has the potential to affect others beyond any immediate dispute via the recording system. *Estate of Reasor*, 635 N.E.2d at 160. According-

---

**10.** In their appellants' brief, the Meyers contend that Knauss did not intend to convey the disputed parcel of property to MBI as evidenced by his subsequent conveyance of the property to the Meyers, which explicitly conveyed the remainder of his real estate to the Meyers. We are unpersuaded by this argument, however, because the Warranty Deed between Knauss and the Meyers', as it pertains to the disputed property, provides only that: "EXCEPT SO MUCH OF THE PROPERTY AS WAS SOLD IN DEED DRAWER 31, INSTRUMENT NO. 13743 DATED JUNE 18, 1999." Appellants' App. at 35. The Warranty Deed between Knauss and the Meyers does not delineate the metes-and-bounds of the property previously conveyed to MBI. Accordingly, the Warranty Deed between Knauss and the Meyers serves as evidence only that Knauss intended to convey to the Meyers all of his property in Shore Acres that he had not previously conveyed to MBI. Such evidence, however, does not help us resolve the present dispute.

**11.** The Meyers also contend that the trial court's entry of summary judgment is erroneous because the statute of frauds bar reformation of the Warranty Deed at issue. However, because we hold that the trial court properly reformed the Warranty Deed between Knauss and MBI, the statute of frauds is not applicable in the present dispute.

ly, Indiana Code Section 32–21–4–1 is inapplicable to the circumstances presented before us because they do not involve a failure to properly record a conveyance or lease. *See, e.g., Ebersol v. Mishler,* 775 N.E.2d 373, 382 (Ind.Ct.App.2002).

*Conclusion*

The trial court did not abuse its discretion by denying the Meyers' motions to strike selected portions of the Boofter and Evanczyk Affidavits. The Agreed Judgment does not bar the present cause of action under the doctrine of res judicata. In addition, because there were no issues of material fact, the grant of summary judgment was appropriate as a matter of law and, as a consequence, the trial court did not err by providing equitable relief in reforming the Warranty Deed in light of the evidence presented. The race-notice statute, i.e., Indiana Code Section 32–21–4–1, does not apply to the particular dispute because the controversy does not involve the failure to properly record a conveyance. Accordingly, the trial court did not err by denying the Meyers' motion for summary judgment and motions to strike, and by granting summary judgment to the Vogts and MBI.

Affirmed.

KIRSCH and VAIDIK, JJ., concur.