## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2017, 5:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Sean Surrisi<br>Culver, Indiana | Fred R. Jones<br>Jones Huff Jones & Richeson, LLP<br>Plymouth, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Neidlinger Trust #0801, by John P. Neidlinger and Casey Neidlinger, Trustees,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Michael S. Lewallen and JMJ Farms, LLC,[1]<br><br>*Appellee-Respondent.* | March 9, 2017<br><br>Court of Appeals Case No. 50A03-1606-MI-1270<br><br>Appeal from the Marshall Circuit Court<br><br>The Honorable Curtis D. Palmer, Judge<br><br>Trial Court Cause No. 50C01-1407-MI-31 |

---

[1] Prior to the judgment in the present case, Neidlinger Trust #0801, by John P. Neidlinger and Casey Neidlinger, Trustees, Lewallen, and JMJ Farms, LLC settled the claim of JMJ Farms, LLC by a consent judgment that quieted in the name of JMJ Farms, LLC. However, under Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal. *Sanitary Dist. of City of Hammond v. Town of Griffith*, 39 N.E.3d 400, 400 n.1 (Ind. Ct. App. 2015), *trans. denied*.

**Kirsch, Judge.**

[1] The Neidlinger Trust #0801, by John P. Neidlinger and Casey Neidlinger, Trustees ("Neidlinger") appeals the trial court's order quieting title to certain real estate located in Marshall County, Indiana in favor of Michael S. Lewallen ("Lewallen"). Neidlinger raises several issues on appeal, which we consolidate and restate as: whether the trial court erred in its judgment quieting title to the disputed property in the name of Lewallen.

[2] We affirm.

## Facts and Procedural History

[3] Around 1900, Mathias Beatty ("Mathias") owned a large tract of real estate, and in 1901, he conveyed a portion of the real estate located in Marshall County, Indiana to his son, Isaiah W. Beatty ("Isaiah"). The conveyed parcel of land was described by deed from Mathias and his wife, Mary Beatty, to Isaiah as follows: "Thirteen acres more or less West of the Rail Road and North of the river of the West half of the North East quarter (NE ¼) of Section Thirty five (35) in Township Thirty three (33) North Range One East." *Appellant's App. Vol. V* at 16. This deed was recorded on October 4, 1901.

[4] In 1902, Mathias devised real estate, located in Marshall County, Indiana, to his other son, Norman Beatty, and his daughter, Savilla Beatty. The parcel of land was described as follows: "[A]ll that part of the West Half (W ½) of the Northeast Quarter (N.E. ¼) of Section Thirty-five (35), Township Thirty-three (33) North, Range One (1) East, that lies South of Yellow River and West of

the Right of way of the Terre Haute and Logansport Railroad, the same containing Ten (10) acres more or less . . . ." *Appellant's App. Vol. IV* at 46. A map identified as the railroad right of way and track map ("the railroad map") from 1916 shows that the width of the railroad right of way south of the point where it touches the Yellow River edge is a width of one hundred feet (50 feet on each side of the centerline) and that the width of the railroad right of way increases to two hundred feet (100 feet on each side of the centerline) at the point where the right of way meets the edge of the Yellow River, then the right of way west of the railroad centerline runs along the edge of the Yellow River until reaching the West Township and Union Township boundary line. *Appellant's App. Vol. V* at 28.

[5] Successive owners of the parcel originally deeded to Isaiah Beatty obtained ownership of the land utilizing the same description that appeared in the original deed to Isaiah Beatty. In 1935, Sylvester Beatty ("Sylvester") obtained ownership in the parcel through a deed that used the same description. However, in 1946, when Sylvester transferred ownership of the parcel of land to the Semrau family, he employed a different description for the land being conveyed because the river changed location. The following legal description was used: "[Thirteen (13)] acres, more or less west (W) of the railroad and North (N) of the old river bed now evidenced by a fence and bluff and continuing said line from said bluff to the railroad right of way, all in the West half (W ½) of the Northeast quarter (NE ¼) of section 35, township 33 North,

range one (1) east in Union Township, Marshall County, Indiana . . . ." *Id*. at 19. The deed was notarized and witnessed by Don F. Kitch ("Kitch"). *Id*.

[6] In a deed dated September 10, 1954, the Semraus conveyed the property, along with other real estate, to Richard H. Ullery and Vera Ullery using the same description that Sylvester used in his conveyance. *Id*. at 20-21. The deed was notarized by Kitch and was recorded on September 27, 1954. *Id*. at 21. On September 24, 1954, prior to the deed being recorded, two affidavits, one by Sylvester and one by Warren McFarlin, were witnessed and notarized by Kitch. *Id*. at 26-27. These affidavits contained the same description of the property and stated that the Semraus and their grantors had been in possession of the property for more than thirty-five years and that no one else had asserted claim against the property. *Id*. The description of the parcel of land remained the same in subsequent conveyances up to, and including, the deed conveying the property to Lewallen in March 2006.

[7] The property originally deeded to Norman and Savilla Beatty continued to be described as it was in the original conveyance all the way up to, and including, when it was conveyed to Don Neidlinger in 1971. When Don Neidlinger died, the property, along with other surrounding property, passed to his sons as trustees of the Neidlinger Trust.

[8] In 2014, Lewallen sought to apply for the classification of his property as forest land and wildland. As part of the application, Lewallen requested his employer, Territorial Engineering, to prepare a survey of his property. On July

18, 2014, Neidlinger filed a complaint against Lewallen to quiet title to, among other parcels of property, a 4.78-acre parcel of land, labeled as Parcel V, which Neidlinger contended was part of Parcel IV, the property originally conveyed to Norman and Savilla and described as lying south of the Yellow River and west of the railroad right of way. On August 14, 2014, Lewallen filed his answer and counterclaim to quiet title to the disputed 4.78 acres of land. A bench trial was held and the parties submitted written final arguments and proposed findings of fact and conclusions. The trial court issued its order quieting title to Parcel V, the disputed 4.78 acres, in favor of Lewallen. Neidlinger now appeals.

## Discussion and Decision

[9] The trial court issued specific findings and conclusions in making its judgment. Our standard of review when the trial court has set forth specific findings and conclusions at the request of a party is well settled. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651 (Ind. Ct. App. 2012).

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate

questions of law de novo and owe no deference to a trial court's determination of such questions.

*Id*. at 651-52 (internal citations and quotation marks omitted).

[10] Because Neidlinger did not prevail at trial, it appeals from a negative judgment. A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id*. In determining whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id*. "A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court." *Id*.

[11] Neidlinger argues that the trial court erred in its judgment quieting title to the disputed 4.78 acres in favor of Lewallen because the trial court's conclusion that title should be quieted in Lewallen's favor was not supported by the evidence presented at trial. Neidlinger asserts that it had priority of title to the disputed land, and its senior title interest was not defeated by Lewallen. Neidlinger claims that the description of its property contained in its title included the disputed land because the 4.78 acres was encompassed in the property "south of the Yellow River," as his parcel of land was described in the title. *Appellant's App. Vol. IV* at 46. Neidlinger further argues that the change in description of Lewallen's property done by Sylvester in 1946 was not accurate as there was no evidence that the river moved from the location of the "purported 'old river bed'

to its current location" and that this attempt by Sylvester to "stake a claim" to Neidlinger's land would not take priority over its title dating back to 1909. *Appellant's Br*. at 25, 26. Additionally, Neidlinger contends that the trial court's reliance on Lewallen's survey was not proper because the survey did not comply with statutory and administrative requirements.[2]

[12] Indiana is a race-notice state, and Indiana Code section 32-21-4-1 provides, in part:

> (a) The following must be recorded in the recorder's office of the county where the land is situated:
>
> (1) A conveyance or mortgage of land or of any interest in land.
>
> (2) A lease for more than three (3) years.
>
> (b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

---

[2] Neidlinger spends a portion of its brief discussing riparian rights and how any movement of the river could not have deprived it of its riparian rights and would not have justified a change in Lewallen's legal description from a "property with a border that fluctuated with the river's movement to one with a fixed border." *Appellant's Br*. at 21. However, Neidlinger did not raise this line of argument to the trial court. "Failure to raise an issue before the trial court will result in waiver of that issue." *Heaphy v. Ogle*, 896 N.E.2d 551, 555 (Ind. Ct. App. 2008). We, therefore, do not reach Neidlinger's argument regarding riparian rights.

The recording statutes offer protection to subsequent purchasers, lessees, and mortgagees. *Weathersby v. JPMorgan Chase Bank, N.A.*, 906 N.E.2d 904, 909-10 (Ind. Ct. App. 2009) (quotation marks omitted) (citing *Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind. 1989)). Instruments will have priority according to the time of the filing thereof. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 774 (Ind. Ct. App. 2003).

[13] Here, in 1901, Mathias Beatty conveyed a portion of his real estate to Isaiah W. Beatty, which was described as follows: "Thirteen acres more or less West of the Rail Road and North of the river of the West half of the North East quarter (NE ¼) of Section Thirty five (35) in Township Thirty three (33) North Range One East." *Appellant's App. Vol. V* at 16. The deed was recorded on October 4, 1901. Later, in 1902, Mathias Beatty devised real estate to his other son, Norman Beatty, and his daughter, Savilla Beatty, which was described as follows: "[A]ll that part of the West Half (W ½) of the Northeast Quarter (N.E. ¼) of Section Thirty-five (35), Township Thirty-three (33) North, Range One (1) East, that lies South of Yellow River and West of the Right of way of the Terre Haute and Logansport Railroad, the same containing Ten (10) acres more or less . . . ." *Appellant's App. Vol. IV* at 46. Under Indiana's race-notice statute, the land conveyed to Isaiah Beatty was recorded first and has priority under any later recorded deeds. We must, therefore, determine if the disputed 4.78 acres were included in the conveyance to Isaiah Beatty, which is presently owned by Lewallen, or to Norman Beatty, which is presently owned by Neidlinger.

[14] When conveyed, the land which is now owned by Lewallen contained the following pertinent description: "Thirteen acres more or less West of the Rail Road and North of the river." *Appellant's App. Vol. V* at 16. The original deed mentioned the existence of the railroad that runs along the eastern boundary of the property, but only referenced the railroad itself and made no reference to the railroad right of way. The land now owned by Neidlinger contained the following relevant description: "that [which] lies South of Yellow River and West of the Right of way of the Terre Haute and Logansport Railroad, the same containing Ten (10) acres more or less." *Appellant's App. Vol. IV* at 46. This description acknowledged the existence of the railroad, but mentioned only the railroad right of way and not the railroad itself as Lewallen's original deed had done.

[15] The railroad map admitted at trial showed that the width of the railroad right of way south of the point where it touches the Yellow River edge is a width of one hundred feet (50 feet on each side of the centerline) and that the width of the railroad right of way increases to two hundred feet at the point where the right of way meets the edge of the Yellow River, then the right of way west of the railroad center line runs along the edge of the Yellow River until reaching the West Township and Union Township boundary line. *Appellant's App. Vol. V* at 28. Because this expansion of the width of the railroad right of way extended all the way to the eastern edge of the river, the entire disputed 4.78 acres was located to the east of the railroad right of way. *Id*. Based on the location of the railroad right of way, the land devised to Neidlinger's original predecessors in

title had to be located south of the point where the railroad right of way and the river converged. The description of Neidlinger's property states that it lies south of the river and west of the railroad right of way. However, none of the disputed 4.78 acres lies west of the railroad right of way; instead, it all lies east of it. *Id.*

[16] We find further support that the disputed 4.78 acres is included in Lewallen's property in the fact that Neidlinger's property description states that it includes land that lies south of the river. The northern border of the disputed property is the township line and not the river; therefore, the only land south the of river is below the disputed property line, which corresponds to Neidlinger's approximately six acres. Additionally, the description for the land conveyed to Lewallen's original predecessor in title stated that it was land west of the railroad and north of the river. If that conveyance only included the portion of land that Neidlinger claims, then the phrase west of the railroad was not necessary because the land could have been described as being west and north of the river since the river would form the western and southern boundaries of the property as Neidlinger contends. We, therefore, conclude, that, at the time of original conveyance, the disputed 4.78 acres was a part of the property conveyed to Isaiah Beatty and now owned by Lewallen.

[17] Within Lewallen's chain of title, the description of the property stayed the same until 1946. That year, Sylvester employed a different description for the land being conveyed due to the river changing location, which was: "[Thirteen (13)] acres, more or less west (W) of the railroad and North (N) of the *old river bed*

*now evidenced by a fence and bluff and continuing said line from said bluff to the railroad right of way*, all in the West half (W ½) of the Northeast quarter (NE ¼) of section 35, township 33 North, range one (1) east in Union Township, Marshall County, Indiana . . . ." *Appellant's App. Vol. V* at 19 (emphasis added). This description has remained consistent through all the subsequent transfers of title, including the transfer to Lewallen. Neidlinger contends that this change in the property's description is significant because it was an attempt to change the "property's southern border from a fluctuating one to a fixed one" and that any land created by the movement of the river, should benefit the owner south of the river, Neidlinger, and not Lewallen. *Appellant's Br.* at 25.

[18] Lewallen testified that the reason for this change in the description of the property was a change in the location of the Yellow River. *Tr.* at 263. He testified that, sometime after the railroad map was made in 1916 and before the property description changed in 1946, the river's path changed slightly to the west and it pulled away from the area where the railroad right of way extended to a 200-foot width into its current location. *Id.* The railroad map clearly showed that the river, at that time, abutted the railroad right of way where it extended to a width of 200 feet. *Appellant's App. Vol. V* at 28. In 2014, the survey prepared by Territorial Engineering showed the location of the river as it was at that time and reflected that the river had shifted west from the time the railroad map was created. *Id.* at 4-5. The survey depicted the location of the old river bed, which is now marked by a fence and bluff. *Id.* Neidlinger did not present any competing surveys to the trial court or present any evidence that the

information contained in the 2014 survey was incorrect. Additionally, there was other testimony to support the contention that the river had changed location in the time since the property was originally conveyed. Carol Beatty, who previously owned Lewallen's property from 1960 to 2002, testified that her father-in-law, who owned the property before her and her husband, told her that the river had changed course some time prior to 1960. *Tr.* at 147, 150. Carol Beatty's son, Jeff Beatty, also testified that his grandfather spoke of the river changing course. *Id.* at 165.

[19]     The 1946 change in the description of property by Sylvester did not, as Neidlinger contends, change the southern border of the property or the area of land legally described. Instead, this change in description was simply done to properly show the existing property boundary because the original property description from 1901 no longer accurately reflected the actual property lines. Because we have previously determined that the disputed 4.78 acres were contained in the land originally conveyed in 1901 to Isaiah Beatty and continuing through Lewallen's chain of title, we conclude that this change in legal description did not cause any change in the title of the 4.78 acres.[3]

[20]     Neidlinger contends that it was error for the trial court to rely on the 2014 survey because it was not conducted as a legal survey under Indiana Code

---

[3] Neidlinger raises an issue challenging that Lewallen or any of his predecessors in title gained title to the 4.78 acres through adverse possession. However, as we have concluded that the disputed 4.78 acres was included in the original conveyance in 1901 to Isaiah Beatty and continued to Lewallen as the present owner, we do not reach Neidlinger's adverse possession argument.

section 36-2-12-10, which sets out certain requirements to follow when a landowner desires to "establish the location of the line between the landowner's land and that of an adjoining landowner." Ind. Code § 36-2-12-10(b). Here, however, Lewallen did not have the survey done in order to establish the property line between his property and Neidlinger's property. Lewallen had the survey prepared as part of his application for the classification of his property as forest land and wildland, and it was not intended to be a legal survey.

[21] Neidlinger also asserts that the survey failed to meet the minimum standards for retracement surveys under the Indiana Administrative Code. The applicable standard provides in pertinent part:

> (b) The plat of survey, together with the accompanying surveyor's report, shall show or otherwise contain the following information at a minimum:
>
> . . . .
>
> (9) Any:
>
> . . . .
>
> (B) streams;
>
> . . . .
>
> on or within seventy-five (75) feet of the surveyed premises. A detailed location, based on applicable statutes and rules, is required when a boundary or easement is determined thereby.

. . . .

> (11) Adjoining parcels identified by title description or record
> reference. Contiguity, gaps, and overlaps with adjoining parcels
> shall be clearly shown and dimensioned. Show only the portion
> of adjoining tracts relevant to the location of the surveyed tract.

865 Ind. Admin. Code 1-12-13(b)(9)(B), (11). Neidlinger's brief neglects to include the part of subsection (11) that states: "Show only the portion of adjoining tracts relevant to the location of the surveyed tract." 865 I.A.C. 1-12-13(11). Contrary to Neidlinger's contention, the survey did show the Yellow River in its current location and the location of the old river bed and bluff. *Appellant's App. Vol. V* at 4-5. The survey also showed the identity of adjacent property owners, but there was no need to show any overlap between Lewallen's and Neidlinger's property as they do not actually overlap. *Id.*

[22] Neidlinger also argues that this court should not give much weight to the trial court's findings and conclusions because they were a wholesale adoption of Lewallen's proposed findings and conclusions. Neidlinger is correct that Indiana courts have stated that the practice of adopting a party's findings and conclusions verbatim weakens the "confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Kitchell v. Franklin*, 26 N.E.3d 1050, 1057 (Ind. Ct. App. 2015) (citing *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003)), *trans. denied*. However, in the present case, the trial court did not adopt Lewallen's proposed findings and conclusions verbatim, which included eleven proposed findings and four

conclusions, while the trial court's judgment included fifty findings and five conclusions. *Appellant's App. Vol. III* at 47-51; *Appellant's App. Vol. II* at 9-19. Neidlinger appears to claim that the trial court's amendment of the original judgment in response to Lewallen's motion to correct error should be treated as a wholesale adoption of Lewallen's proposed findings and conclusions. We disagree. In its original judgment, the trial court made a scrivener's error in identifying the disputed 4.78 acres as Parcel IV, when it should have been referred to as Parcel V. Lewallen's motion to correct error was simply to point out the error and to request that all references be changed accordingly, which the trial court promptly did when it issued its amended findings and conclusions. Therefore, there was no verbatim adoption of Lewallen's proposed findings and conclusions.

[23] We conclude that the trial court did not err in its judgment that the disputed 4.78 acres were included in the original conveyance of property to Isaiah Beatty in 1901 and continued to be a part of the property through all successors in title up to and including Lewallen. The subsequent change in the legal description of the property in 1946 did not alter the ownership of the 4.78 acres. The evidence presented at trial supported the trial court's findings, and the findings supported the trial court's conclusions. We affirm the trial court's judgment that title to the 4.78 acres should be quieted in favor of Lewallen.

[24] Affirmed.

[25] Robb, J., and Barnes, J., concur.